# United States Court of Appeals
## For the First Circuit

No. 05-2034

UNITED STATES OF AMERICA,

Appellant,

v.

RUDY FRABIZIO,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Torruella, Lynch, and Howard,
Circuit Judges.

Dana M. Gershengorn, Assistant United States Attorney, with
whom Seth P. Berman, Assistant United States Attorney, and Michael
J. Sullivan, United States Attorney, were on brief, for appellant.
    Miriam Conrad, with whom Federal Defender Office was on brief,
for appellee.

August 16, 2006

**LYNCH, Circuit Judge.**  This is the government's appeal from a pre-trial order by a district court excluding from jury consideration three photographs, which the government has charged are child pornography.

In 2004, Rudy Frabizio was indicted on, inter alia, one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B).  That statute prohibits the knowing possession of:

> 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if --
> > (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and
> > (ii) such visual depiction is of such conduct . . . .

18 U.S.C. § 2252(a)(4)(B).  "[S]exually explicit conduct" is, in turn, defined as, inter alia, "lascivious exhibition of the genitals or pubic area of any person."  Id. § 2256(2)(A)(v).[1]

The government's filings state that Frabizio's former employer, the Limbach Company, had found certain images on Frabizio's work computer and had terminated Frabizio for violating company rules concerning internet usage -- in particular, rules

---

[1]  The term "sexually explicit conduct" also includes other conduct -- sexual intercourse, bestiality, masturbation, and sadistic or masochistic abuse -- not relevant to this case.  18 U.S.C. § 2256(2)(A)(i)-(iv).

prohibiting the viewing of inappropriate websites. FBI examiners then found a number of images on Frabizio's work computer that formed the basis for his indictment for possession of child pornography. In response to Frabizio's request for a bill of particulars, the government identified nineteen specific images it intended to introduce at trial.

Frabizio moved to have the district court review the nineteen images before trial and to exclude from evidence those that the court determined would not meet the legal definition of "sexually explicit conduct."[2] The government objected to the procedure, arguing that such a preliminary review of the images interfered with the jury's function. The government also argued that the standard to be applied if the court were to engage in such a review should be whether a reasonable jury could find that an image depicts "sexually explicit conduct" within the meaning of 18 U.S.C. § 2256(2)(A).

On April 21, 2005, the district court granted Frabizio's request that it perform a preliminary review of the images in order to determine their admissibility. The court, as the government had

---

[2] There is no dispute that the images were "visual depictions." Frabizio argued only that those visual depictions were not of "sexually explicit conduct."

To obtain a conviction under 18 U.S.C. § 2252(a)(4)(B), the government must prove several elements independent of the requirement that the visual depiction be of "sexually explicit conduct," including the element that the visual depiction be "knowingly possess[ed]." This case involves no question about these other elements of the crime.

-3-

urged, adopted the standard of whether a reasonable jury could find that the images depicted "sexually explicit conduct" in the form of "lascivious exhibition of the genitals or pubic area."

At the hearing before the district court, the government explained that it was prepared to present evidence that three of the images, Exhibits 1, 2, and 3, were of "known child victims."[3] This evidence was significant because "the government must prove that an image depicts actual children to sustain a . . . conviction" under the statute. United States v. Hilton, 386 F.3d 13, 18 (1st Cir. 2004) (per curiam) (citing Ashcroft v. Free Speech Coal., 535 U.S. 234, 251-56 (2002)). Frabizio focused his challenge on those three images and one other. After examining the images, and eschewing consideration of the circumstances in which the photographs were produced or of any other evidence, the district court issued an order on May 9, 2005, in which it excluded from evidence the three images of the putative "known child victims," Exhibits 1, 2, and 3, but agreed with the government that the fourth challenged exhibit was admissible.

---

[3] As to these three exhibits, the government said that it had "a witness . . . who has met the children [depicted in the three photographs], knows that [the children were] between the ages of 10 and 12 when [the photographs] were taken, [and] knows that they were lured to a remote location by a stream in Paraguay and made to remove their clothing and [to] pose." In contrast, as to the other sixteen images, the government stated that it would have "to rely on the testimony of experts about whether or not the children involved are real."

-4-

Utilizing the so-called "Dost factors," see United States v. Dost, 636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom. United States v. Wiegand, 812 F.2d 1239 (9th Cir. 1987), the district court concluded that no reasonable jury could conclude that Exhibits 1, 2, or 3 met the statutory requirement of "lascivious exhibition of the genitals or pubic area." The court then said it was excluding the images pursuant to Rule 104(a) of the Federal Rules of Evidence.[4] In a footnote, the court also said it would use Rule 403 of the Federal Rules of Evidence as an alternate basis for exclusion, because the government could rely on the sixteen other images identified in its bill of particulars, and thus Exhibits 1, 2, and 3 would only be cumulative.

In this interlocutory appeal, over which we have jurisdiction pursuant to 18 U.S.C. § 3731, the government challenges the exclusion of the three images. We reverse, disagreeing both with the district court's ultimate conclusion and with the methodology of analysis that it used.

---

[4] Rule 104(a) merely provides for preliminary determinations of admissibility. See Fed. R. Evid. 104(a) ("Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court . . . ."). It does not in itself establish the correctness of the procedures used here.

## Exclusion of the Exhibits Under Fed. R. Evid. 104(a)

The question before us, as framed by the parties, is whether a reasonable jury reviewing the three photographs could have concluded that they met the statutory requirement of "lascivious exhibition of the genitals or pubic area."[5] No deference is owed to the district court's resolution of this question. Indeed, this question, like one arising in the context of a challenge to the sufficiency of evidence supporting a jury's verdict, is one of which we engage in de novo review. Cf. United States v. Rayl, 270 F.3d 709, 712 (8th Cir. 2001) (reviewing a sufficiency challenge to a jury verdict of guilty in a child pornography case); cf. also United States v. Rivera Rangel, 396 F.3d 476, 482 (1st Cir. 2005) (engaging in de novo review of sufficiency challenge); United States v. Pimental, 380 F.3d 575, 583 (1st Cir. 2004) (same). Also, our review of the meaning of the statute is de novo. See In re Pharmatrak, Inc., 329 F.3d 9, 19

---

[5] This appeal did not come to us in the usual posture of appellate review of a district court's grant or denial of a motion for a judgment of acquittal after the presentation of the government's case. See Fed. R. Crim. P. 29; see also, e.g., United States v. Rayl, 270 F.3d 709, 714-15 (8th Cir. 2001); United States v. Horn, 187 F.3d 781, 789-90 (8th Cir. 1999); United States v. Muick, 167 F.3d 1162, 1166 (7th Cir. 1999); United States v. Villard, 885 F.2d 117, 120-21 (3d Cir. 1989). The government has chosen not to challenge on appeal the procedure used by the district court, so we do not decide the question of its appropriateness.

(1st Cir. 2003); United States v. Horn, 187 F.3d 781, 789 (8th Cir. 1999).

The statutory question before us must be placed in the context of Supreme Court's decision in New York v. Ferber, 458 U.S. 747 (1982), which upheld against a First Amendment challenge a New York statute criminalizing the distribution of child pornography. In Ferber, the Court held that the New York statute served the purpose of "prevention of sexual exploitation and abuse of children," which was "a government objective of surpassing importance." Id. at 757. The Court recognized that "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child[ren]." Id. at 758. The distribution of child pornography, the Court reasoned, "is intrinsically related to the sexual abuse of children in at least two ways": "First, the materials produced are a permanent record of the children's participation and the harm to the child[ren] is exacerbated by their circulation. Second, the distribution network for child pornography must be closed if the production of material which requires the sexual exploitation of children is to be effectively controlled." Id. at 759 (footnote omitted); see also Osborne v. Ohio, 495 U.S. 103, 110-11 (1990) (upholding the prohibition on private possession of child pornography for these same reasons, among others).

-7-

Because of the "particular and more compelling interest in prosecuting those who promote the sexual exploitation of children," the Court held that all child pornography -- even that which is not obscene under the standard set forth in Miller v. California, 413 U.S. 15 (1973) -- is outside the scope of the First Amendment and can be banned. Ferber, 458 U.S. at 761; see also Free Speech Coal., 535 U.S. at 240 ("As a general rule, pornography can be banned only if obscene, but under Ferber, pornography showing minors can be proscribed whether or not the images are obscene . . . .").

Importantly for our case, the Supreme Court also held in Ferber that laws banning child pornography withstand First Amendment scrutiny so long as "the conduct to be prohibited [is] adequately defined by the applicable . . . law, as written or authoritatively construed"; the material prohibited "involve[s] live performance or photographic or other visual reproduction of live performances"; and "criminal responsibility [is not] imposed without some element of scienter on the part of the defendant." Ferber, 458 U.S. at 764-65. The Court then looked to the New York statute, which prohibited the distribution of material depicting "sexual conduct," which was statutorily defined as, inter alia, "lewd exhibition of the genitals." The Court concluded this was a definition which did not offend the First Amendment. See id. at 765, 773-74.

The Supreme Court went beyond that. It also observed that the term "lewd exhibition of the genitals" was a known quantity in this area of law, and that it "was given in Miller as an example of a permissible regulation." Id. at 765 (citing Miller, 413 U.S. at 25); see also Osborne, 495 U.S. at 114.

The language of the federal statute under consideration in this case is virtually the same as that upheld in Ferber as an adequate definition in light of First Amendment concerns.[6] In 18 U.S.C. § 2256(2)(A), the word "lascivious" replaces the word "lewd," as was used by the New York statute upheld in Ferber. Moreover, the federal prohibition extends beyond "the genitals" to the "pubic area."[7] The Courts of Appeals have uniformly treated the terms "lewd" and "lascivious" as materially equivalent. See, e.g., United States v. Adams, 343 F.3d 1024, 1035 (9th Cir. 2003) ("We hold that the statute at issue in Ferber is legally

_____

[6] The New York statute under consideration in Ferber defined "sexual conduct" in terms almost identical to the definition of "sexually explicit conduct" set forth in 18 U.S.C. § 2256(2)(A). See N.Y. Penal Law § 263.00(3) (McKinney 1980) ("'Sexual conduct' means actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals.").

[7] The federal child pornography statute also used the term "lewd" until 1984, when Congress substituted in the word "lascivious" to "make it clear that an exhibition of a child's genitals does not have to meet the obscenity standard to be unlawful." Dost, 636 F. Supp. at 831 (quoting 130 Cong. Rec. S3510, S3511 (daily ed. Mar. 30, 1984) (statement of Rep. Specter)); see also United States v. Freeman, 808 F.2d 1290, 1292 (8th Cir. 1987).

indistinguishable from 18 U.S.C. § 2256(2)(A). . . . [T]his court has equated 'lascivious' with 'lewd.'" (citing Wiegand, 812 F.2d at 1243)); United States v. Reedy, 845 F.2d 239, 241 (10th Cir. 1988). The Supreme Court has itself endorsed this position. See United States v. X-Citement Video, Inc. (X-Citement Video II), 513 U.S. 64, 78-79 (1994) (approving of United States v. X-Citement Video, Inc., 982 F.2d 1285, 1288 (9th Cir. 1992), rev'd on other grounds, X-Citement Video II, 513 U.S. 64). The addition of the term "pubic area" has independent significance in that it broadens the class of exhibitions that may be prohibited.

"Lascivious" is a "commonsensical term," and whether a given depiction is lascivious is a question of fact for the jury. Wiegand, 812 F.2d at 1243; see also Rayl, 270 F.3d at 714 ("[T]he question whether materials depict 'lascivious exhibition of the genitals,' an element of the crime, is for the finder of fact."); Reedy, 845 F.2d at 241 ("This [c]ourt agrees . . . that 'lascivious' is . . . a commonsensical term . . . ." (internal quotation mark omitted) (quoting Wiegand, 812 F.2d at 1243)). Indeed, "[t]here is a consensus among the courts that whether the item to be judged is lewd, lascivious, or obscene is a determination that lay persons can and should make."[8] United

---

[8] For this reason, expert testimony is not required on the subject. See United States v. Arvin, 900 F.2d 1385, 1390 (9th Cir. 1990). There is, at the same time, no general rule that it is prohibited.

-10-

States v. Arvin, 900 F.2d 1385, 1390 (9th Cir. 1990); see also id. (citing cases). The courts are also in agreement that the term "lascivious" is sufficiently well defined to provide persons "of reasonable intelligence, guided by common understanding and practices," notice of what is permissible and what is impermissible. United States v. Freeman, 808 F.2d 1290, 1292 (8th Cir. 1987) (rejecting vagueness challenge); accord, e.g., X-Citement Video II, 513 U.S. at 78-79 (endorsing circuit court's conclusion that "lascivious" was a constitutionally permissible standard and was neither overbroad nor vague); Adams, 343 F.3d at 1035-36 (rejecting argument that "lascivious" is "too subjective" and "not susceptible to a common understanding"); cf. Ferber, 458 U.S. at 765 (holding that the New York statute was not unconstitutionally underinclusive, because it "sufficiently describes a category of material the production and distribution of which is not entitled to First Amendment protection").

Subject to motions under Rule 29 of the Federal Rules of Criminal Procedure, it is up to the jury to determine whether the images identified in the bill of particulars as a basis for an indictment under 18 U.S.C. § 2252(a)(4)(B) constitute visual depictions of "sexually explicit conduct," defined as "lascivious exhibition of the genitals or pubic area" under 18 U.S.C. § 2256(2)(A)(v). In making this determination, the standard to be applied by the jury is the statutory standard. The statutory

-11-

standard needs no adornment.  The Supreme Court has made clear that the Constitution does not require additional glossing or narrowing of the standard, see Ferber, 458 U.S. at 765; cf. id. at 764 ("A trier of fact need not find that the material appeals to the prurient interest of the average person; it is not required that sexual conduct portrayed be done so in a patently offensive manner; and the material at issue need not be considered as a whole."), and Congress has chosen not to employ any additional glossing.  Further definitional guides are not required and, indeed, would be prohibited if they functioned to narrow the statutory definition.[9]

Using the statutory standard and asking whether a reasonable jury could conclude that Exhibits 1, 2, and 3 met the standard, this panel has reviewed the disputed images and has concluded that a reasonable jury could decide that the three photographs constitute lascivious exhibitions of the genitals or pubic area within meaning of the statute.

---

[9]    In other areas, this court has cautioned against judicial attempts to clarify commonsensical standards that the jury is well equipped to interpret and apply.  For example, we have held that the phrase "beyond a reasonable doubt" "need[s] no defining or refining."  United States v. Campbell, 874 F.2d 838, 843 (1st Cir. 1989).  Accordingly, we have warned that "[m]ost efforts at clarification result in further obfuscation of the concept," and that any judicial gloss on the phrase that "reduce[s] the burden of proof on the government by expanding the degree of doubt permissible" would be prohibited.  Id.; see also United States v. Gibson, 726 F.2d 869, 874 (1st Cir. 1984) ("[A]ny attempt to define 'reasonable doubt' will probably trigger a constitutional challenge.").

We describe how a reasonable jury could view the three exhibits under consideration, with full recognition that a thousand words are not necessarily worth a picture. Each of the three photographs depicts a nude girl, who is posed alone and who is looking directly at the camera. Each girl appears on the cusp of puberty, either prepubescent or adolescent. The subjects of the photographs, who are of an age when girls normally are clothed even when in nature or in a stream, are completely unclothed (except for some jewelry), and the settings of the photographs provide no ready explanation that makes the nudity indisputably innocent. Moreover, in each photograph, a jury could reasonably conclude that there was an "exhibition" of the "pubic area": each of the girls' legs are parted and the pubic area is plainly visible. Indeed, the photos could reasonably be seen as focusing on or particularly drawing attention to the girls' pubic areas and, specifically, to their vaginas. A jury could reasonably conclude that none of the girls' postures were natural or spontaneous, that each girl was deliberately posed to exhibit her pubic area, and that the posture in which each was posed was not a comfortable one. As a jury will consider the images, we think the wisest course is to avoid more detailed description of them.

In light of the criteria under the statute and the constitutional limits set by Ferber, and our own review of the exhibits, we conclude that a reasonable jury could find that the

-13-

three photographs constitute "lascivious exhibitions of the genitals or pubic area" within the meaning of the statute, and that the district court erred in taking the evidence away from the jury.

**II.**

## **Difficulties with the Analytical Methodology and the Use of the Dost Factors**

Having held that the district court erred in its determination, under Rule 104(a), that no reasonable jury could find these images to be a lascivious display of the genitals or pubic area, we also express concern about the approach that the district court took in reaching its decision -- an approach that, we recognize, was urged upon the court by the parties. In excluding the three exhibits, the court analyzed the question of whether to exclude the evidence almost exclusively in terms of the Dost factors, and, in our view, overemphasized those factors in a way which raised the risk of inappropriately limiting the statute.

This court has described the Dost factors as follows:

> (1) whether the genitals or pubic area are the focal point of the image; (2) whether the setting of the image is sexually suggestive (i.e., a location generally associated with sexual activity); (3) whether the child is depicted in an unnatural pose or inappropriate attire considering her age; (4) whether the child is fully or partially clothed, or nude; (5) whether the image suggests sexual coyness or willingness to engage in sexual activity; and (6) whether the image is intended or designed to elicit a sexual response in the viewer.

-14-

United States v. Amirault, 173 F.3d 28, 31 (1st Cir. 1999) (citing Dost, 636 F. Supp. at 832).

In Amirault, this court gave a qualified endorsement of the Dost factors, stating that they are "generally relevant and provide some guidance." Id. at 32. We did not, however, suggest that the Dost factors were the equivalent of -- or established the limits of -- the statutory term "lascivious." Indeed, we reached the opposite conclusion: "[w]e emphasize[d] . . . that these factors are neither comprehensive nor necessarily applicable in every situation" and that "[t]he inquiry will always be case-specific." Id.; see also United States v. Hilton, 257 F.3d 50, 57 (1st Cir. 2001) (warning that the Dost factors, "although 'generally relevant,' are not comprehensive[,] and each determination of whether an image contains a lascivious display is necessarily case specific" (quoting Amirault, 173 F.3d at 32)).

In this case, the district court's analysis, although reciting the above language, in fact gave the Dost factors greater weight than warranted. The court appeared to treat the Dost factors as exhaustive and to use them to set the boundaries of the statutory term "lascivious." The court thus applied the six Dost factors in a way that accorded to them the same status as the statutory definition itself.

The consequence of the district court's unqualified application of the Dost factors was to take the issue of the

lasciviousness of the three images away from a jury.  None of the cases in which this court has referred to the Dost factors raised such a prospect.[10]  In Amirault, for example, the issue on appeal was whether the district court had properly increased the sentence, under the U.S. Sentencing Guidelines, of a defendant who had pleaded guilty to one count of possession of child pornography, by applying a cross-reference that resulted in a higher base-offense level if the crime involved trafficking in visual depictions of lascivious exhibition of the genitals or pubic area of a minor. 173 F.3d at 30-31.  In Amirault, the task of interpreting and applying the Sentencing Guidelines was for the court, and any close "judgment calls" -- and we noted that there were some -- were the court's to make.  Id. at 35.  Indeed, the particular image on which the trafficking cross-reference was predicated was not one that had formed the basis of the conviction.  Id. at 30.

No other circuit court, as best we can tell, has ever approved the use of the Dost factors in a pretrial proceeding to

_____

[10]    See Hilton, 257 F.3d at 57-58 (reinforcing the limited and qualified use of the Dost factors, and concluding, on de novo review of a sentencing determination, that certain images were not lascivious); United States v. Brunette, 256 F.3d 14, 17-18 (1st Cir. 2001) (using the Dost factors in evaluating the existence of probable cause for a warrant); United States v. Nolan, 818 F.2d 1015, 1019 n.5 (1st Cir. 1987) (describing the Dost factors without applying them or endorsing them).
    As should be clear from our earlier discussion, if the Dost factors were viewed, contrary to the law of this circuit, as being co-extensive with the statute, then the district court nevertheless erred.

-16-

remove the consideration of the lasciviousness of an image from a jury.[11]

There are many reasons for the need for caution about the use of the <u>Dost</u> factors, particularly in this way. First is the fact that the <u>Dost</u> factors have fostered myriad disputes that have led courts far afield from the statutory language. One dispute is, for example, how many of the factors must be present in an image for it to qualify as "lascivious."[12] <u>Compare</u>, <u>e.g.</u>, <u>United States</u> v. <u>Wolf</u>, 890 F.2d 241, 245 & n.6 (10th Cir. 1989) ("We do not hold that more than one <u>Dost</u> factor must be present . . . ."), <u>with</u> <u>United States</u> v. <u>Villard</u>, 885 F.2d 117, 122 (3d Cir. 1989) ("Although more than one factor must be present in order to establish 'lasciviousness,' all six factors need not be present."). Another dispute is about what the specific factors mean. <u>See</u>, <u>e.g.</u>, <u>Amirault</u>, 173 F.3d at 34 (cataloging disagreement about what the sixth <u>Dost</u> factor means). As one commentator observed, "the

---

[11] Indeed, only one circuit court has even suggested -- in dicta -- that a district court should conduct a preliminary review of images before they are submitted to a jury, and even then only where there was "potential prejudice in allowing the government to introduce and submit to the jury a large volume of materials that are prurient but non-obscene along with a few materials that could properly be found to be child pornography." <u>Rayl</u>, 270 F.3d at 714. <u>Rayl</u> did not mention the <u>Dost</u> factors. Instead, it indicated that the appropriate standard was the statutory standard of "lascivious exhibition of the genitals or pubic area." <u>Id.</u>

[12] In fact, this was precisely one of the disputes that arose in this case. The government had argued before the district court that the court should send an image to the jury so long as it found that at least one <u>Dost</u> factor was present.

Dost test has produced a profoundly incoherent body of case law."
A. Adler, Inverting the First Amendment, 149 U. Pa. L. Rev. 921,
953 (2001). There is every reason to avoid importing unnecessary
interpretive conundrums into a statute, especially where the
statute employs terms that lay people are perfectly capable of
understanding.

Even more significantly, there is a risk that the Dost
factors will be used to inappropriately limit the scope of the
statutory definition.[13] That is impermissible. We offer two
examples in which such a risk has been raised.

The first example is one that was noted by the Ninth
Circuit when affirming one of the convictions in the Dost case. In
United States v. Wiegand, 812 F.2d 1239, the Ninth Circuit noted
that the Dost factors were "over-generous to the defendant." Id.
at 1244. Specifically, the court took issue with the fifth factor
articulated by the district court: "whether the visual depiction
suggests sexual coyness or a willingness to engage in sexual
activity." Dost, 636 F. Supp. at 832. The appellate court
expressed disapproval at "[t]he standard employed by the district
court[, which] . . . impl[ied] . . . that the pictures would not be
lascivious unless they showed sexual activity or willingness to

---

[13]  Most cases endorsing Dost do so against attacks by the
defendant, fearful the Dost factors will expand the statutory term.
This case arises in a different posture. Here the government has
objected to the use made by the district court of the Dost factors
as limiting the scope of the statutory term.

engage in it." Wiegand, 812 F.2d at 1244. Emphasizing that "[t]he offense defined by the statute is depiction of a 'lascivious exhibition of the genitals,'" the appellate court held that it was enough that "the pictures were an exhibition," "[t]he exhibition was of the genitals," and "[e]ach of the pictures featured the child photographed as a sexual object." Id.

It is obvious that if an image does depict a sexually alluring look from the minor, it will be easier to show that the image is lascivious. The absence of a sexual come-on, though, does not mean that an image is not lascivious, as Wiegand and other cases have noted. See, e.g., United States v. Knox, 32 F.3d 733, 747 (3d Cir. 1994) ("Children posing for pornographic pictures may suffer dramatic harm regardless of whether they have an 'adult' look of sexual invitation or coyness on their face."); Wolf, 890 F.2d at 247 (noting that "a sexually exploitative photograph of a child need not portray the victim in a pose that 'depicts lust, wantonness, sexual coyness or other inappropriate precocity'"). Children do not characteristically have countenances inviting sexual activity, and the statute does not presume that they do. By suggesting that the child subject must exhibit sexual coyness in order for an image to be lascivious, the district court in Dost ran the risk of limiting the statute.

A second example of how the Dost factors may risk limiting the statute manifested itself in this case. In its order,

-19-

the district court overread <u>Amirault</u> as holding that a jury, in determining whether a given image constitutes a "lascivious exhibition of the genitals or pubic area," is limited to considering "the objective criteria of the photograph's design," <u>Amirault</u>, 173 F.3d at 35 -- what the district court called "the four corners of the image" -- and nothing else.[14] The district court erred in stating that this court has adopted a general "four corners rule." <u>Amirault</u> did not adopt such a rule,[15] and the text of the statute itself does not require it.

---

[14] The district court also noted that "Frabizio argued that any information as to the purpose for which the photographs were taken is hearsay." To the extent the court relied on this alternative reasoning, we note that Fed. R. Evid. 104(a) explicitly provides that "[i]n making its determination [of admissibility of evidence, the court] is not bound by the rules of evidence except those with respect to privileges."

[15] The language in <u>Amirault</u> to which the district court cited in support of its view came in the context of <u>Amirault</u>'s construction of the sixth <u>Dost</u> factor -- that of intent to elicit a sexual response. <u>Amirault</u> did not express a general rule limiting the question of lasciviousness to the four corners of the photograph. It only expressed doubt about the government's argument in that case that the court should take into account the subjective intent of the producer or the subjective reaction of the viewer of the image when deciding whether a particular depiction meets the sixth <u>Dost</u> factor. <u>See</u> <u>id.</u> at 34 (registering "serious doubts that focusing upon the intent of the deviant photographer is any more objective than focusing upon a pedophile-viewer's reaction," and noting that "a focus on the photograph's use seems inconsistent with the statute's purpose of protecting the child"). <u>Amirault</u>'s commentary was on different issues, and it did not exclude from consideration any evidence that the subjects of the depictions were known child victims who were exploited in the process of making the photographs. In fact, <u>Amirault</u> explicitly observed as to the image under consideration that "the circumstances of the photograph's creation are unknown." <u>Id.</u>

-20-

The issue of the four corners rule, and even of what it means, has not been decided by this circuit, and we do not decide it here. The issue is complicated, and there are arguments going different ways. For example, it is clear that the jury may hear evidence about the circumstances of the production of an image in determining whether the child depicted therein is real. It is arguable that a jury should not be precluded from considering such evidence on the question of lasciviousness as well. The laws prohibiting possession of child pornography are constitutional because the government has a compelling interest in preventing sexual exploitation of children; it is not obvious that a jury cannot consider evidence of exactly that exploitation in evaluating the lasciviousness of the materials. Cf. Free Speech Coal., 535 U.S. at 254 ("In the case of the material covered by Ferber, the creation of the speech is itself the crime of child abuse . . . ."); see also id. at 250 (noting that "speech [that] had what the Court in effect held was a proximate link to the crime from which it came" was not constitutionally protected). But there are also arguments, usually made in the context of the very different question of whether the subjective reaction or intent of the viewer should be taken into account when determining whether an image is lascivious, that lasciviousness should be determined from the image alone. Cf. Villard, 885 F.2d at 125 (holding, in the context of a sufficiency-of-the-evidence challenge to a jury verdict, that in

evaluating the question of an image's lasciviousness, "[w]e must . . . look at the photograph, rather than the viewer," because if "we were to conclude that the photographs were lascivious merely because Villard found them sexually arousing, we would be engaging in conclusory bootstrapping").

The issue, however, has not been squarely presented to us in this case.[16] We flag it only to express concern that in deriving such a prohibition from <u>Dost</u> or from a misunderstanding of our case law, the district court ran the risk of impermissibly narrowing the scope of the statute by imposing upon the statute a limitation that was in no way compelled by the statutory text itself.

We stress that our holding today is limited: We do not hold that the <u>Dost</u> factors may never be used.  We hold only that they are not the equivalent of the statutory standard of "lascivious exhibition" and are not to be used to limit the statutory standard.[17]

---

[16]   The government had argued before the district court that testimony that a child was exploited in the process of creating an image provides objective evidence that the picture was taken for the purpose of child pornography and is thus evidence that a jury ought to be able to consider in determining whether a photograph is objectively lascivious.

[17]   The concurring opinion states that our position is incompatible with this court's prior decision in <u>Amirault</u>.  To the contrary, our holding is not just consistent with, but takes as its starting point, <u>Amirault</u>'s holding that the <u>Dost</u> "factors are neither comprehensive nor necessarily applicable in every situation."  173 F.3d at 32.

## III.

## Exclusion of Exhibits Under Fed. R. Evid. 403

In a footnote, the district court alternatively excluded the three exhibits pursuant to Fed. R. Evid. 403, holding that the three images were cumulative in that the government could rely on the sixteen other images identified in its bill of particulars.

Although Rule 403 "enables a trial judge to exclude needlessly cumulative evidence," it also "requires a balance of probative value against the negative consequences of using a particular piece of evidence." Sec'y of Labor v. DeSisto, 929 F.2d 789, 794-95 (1st Cir. 1991). We review the district court's application of Rule 403 deferentially, but will overturn the district court's ruling if there is an abuse of discretion. United States v. Gilbert, 229 F.3d 15, 20-21 (1st Cir. 2000). "[A]n abuse of discretion occurs 'when a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales.'" Id. at 21 (quoting United States v. Roberts, 978 F.2d 17, 21 (1st Cir. 1992)).

Here, the district court abused its discretion by failing, as required by Rule 403, to properly weigh its concerns about cumulativeness against the probative value of the evidence.

In fact, the court did not even comment directly on the probative value of the three exhibits; it merely quoted the conclusion of the district court in United States v. Dean, 135 F. Supp. 2d 207 (D. Me. 2001), that the "four nonessential, questionable photos [in that case were] not particularly probative." Id. at 211. The three images at issue in this case were the only ones for which the government was prepared to introduce evidence that the girls depicted therein were known child victims; to satisfy its burden to show that the sixteen other images were of real minors, the government would have to call on experts to testify.

Having failed to undertake properly the balancing required by Rule 403, the district court abused its discretion in excluding the images under that rule.

## IV.

We reverse the district court's exclusion of the three images; we hold they are admissible in evidence. The case is remanded for further proceedings consistent with this opinion.

**Concurrence follows.**

**TORRUELLA, <u>Circuit Judge</u>, concurring in the judgment.** I agree with the majority that the district court erred in excluding the three images from evidence. I write separately because I disagree with the majority's analysis and also because the majority does not give due weight to circuit precedent. I first present my own analysis for excluding the three images and second note my disagreements with the majority's analysis.

## I. Exclusion of the Exhibits Under Fed. R. Evid. 104(a)

As ably described in the majority opinion, Congress has made it a crime to possess visual depictions of minors engaging in sexually explicit conduct. 18 U.S.C. § 2252(a)(4)(B). The term "sexually explicit conduct" includes the "lascivious exhibition of the genitals or pubic area." <u>Id.</u> § 2256(2)(A). Congress did not further define the term "lascivious."

Finding that more guidance was necessary, the district court in <u>United States</u> v. <u>Dost</u> enumerated a list of factors to consider in determining whether a picture lasciviously exhibits the genitals or pubic area. 636 F. Supp. 828, 832 (S.D. Cal. 1986), <u>aff'd sub nom.</u> <u>United States</u> v. <u>Wiegand</u>, 812 F.2d 1239, 1244 (9th Cir. 1987). Several circuits, including ours, have referred to the <u>Dost</u> factors in considering whether images lasciviously exhibit the genitals or pubic area. <u>See</u> <u>United States</u> v. <u>Amirault</u>, 173 F.3d 28, 31 (1st Cir. 1999) (citing cases). While we found that the <u>Dost</u> factors were generally relevant and provided guidance, our

-25-

embrace of them was only equivocal. Id. at 32. We found that the factors "are neither comprehensive nor necessarily applicable in every situation" and that "there may be other factors that are equally if not more important in determining whether a photograph contains a lascivious exhibition." Id.

Before considering whether a reasonable jury could find the three images lascivious, I wish to note several background principles relevant to our analysis. First, I believe that an important consideration, which was not directly addressed by Dost nor by the district court, is whether the production or existence of the picture is harmful to the depicted child. Clearly, the protection of children from sexual exploitation is "a government objective of surpassing importance." New York v. Ferber, 458 U.S. 747, 757 (1982). The victims of child pornography can be harmed not only by the production of the pornography but also by the continued existence of the pornography on the Internet. See id. at 759-60 & n.10. Furthermore, the existence of the pornography can be harmful to the child even if its production was not (e.g., if photographs were surreptitiously taken).

In passing and amending laws prohibiting child pornography, Congress has clearly been concerned with protecting children from harm. See Child Pornography Prevention Act of 1996, Pub. L. No. 104-208, § 121, 110 Stat. 3009, 3009-26 (1996) (finding that child pornography "is a form of sexual abuse which can result

in physical or psychological harm, or both, to the children involved."); Child Abuse Victims' Rights Act of 1986, Pub. L. No. 99-591, 100 Stat. 3341-74 (1986) (recognizing "the physiological, psychological, and emotional harm caused by the production, distribution, and display of child pornography by strengthening laws prescribing such activity"); Child Protection Act of 1984, Pub. L. No. 98-292, 98 Stat. 204 (1984) (finding that "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the individual child and to society").  The government is prosecuting Defendant for violating 18 U.S.C. § 2252.  This statute is titled "Certain activities relating to material involving the sexual exploitation of minors" and is under the chapter titled "SEXUAL EXPLOITATION AND OTHER ABUSE OF CHILDREN."

It is my belief that Congress intended that the perceived harm to the depicted child by the production or existence of the picture be an essential factor in determining whether a picture lasciviously depicts the genitals or pubic area.  While the Dost factors address the harm to the child in an oblique manner, I instead put the harm at the forefront of the analysis.  See Amirault, 173 F.3d at 32 (stating that the Dost factors "are neither comprehensive nor necessarily applicable in every situation").  To the extent that the Dost factors address the harm to the child, they will be relevant to my analysis.

The notion of what depictions are harmful to the child cannot help but be informed by cultural norms. While the act of exploiting a child is harmful by definition, certain displays of nudity may be harmful solely because they are socially unacceptable. These social norms are not universal. In some cultures, nudity may be commonplace while, in others, the appearance of a woman's eyes may be lascivious. See Ferber, 458 U.S. at 775 (O'Connor, J., concurring) (noting the relevance of cultural norms to the harmfulness of a picture). These norms will also evolve over time. See Clay Calvert, The Perplexing Problem of Child Modeling Web Sites: Quasi-Child Pornography and Calls for New Legislation, 40 Cal. W. L. Rev. 231, 253-54 (2004). In prohibiting lascivious pictures of children, I believe Congress intended to prohibit pictures where, given our cultural norms, the content is harmful to the depicted child.

With these background principles in mind, I now address the three images that are the subject of this appeal. First, the age and developmental state of the depicted child is relevant to the harm caused and thus the lasciviousness of the images. A picture of a nude child is more likely to be harmful to the child when the depicted child is an adolescent or prepubescent rather than an infant. This is not because infants are beyond the perverse interests of pedophiles, but because nude pictures of infants are so widely approved in our culture that such pictures

are less likely to cause harm to the child. The government has evidence that the depicted girls were ten to twelve years old at the time the pictures were taken, and the pictures are consistent with this evidence. Because a picture of a nude ten-to-twelve-year-old child is not socially acceptable, an exhibition of the child's genitals or pubic area is more likely to be harmful to the child.

Second, the portrayal of the child must be considered in determining whether an image is lascivious. Analyzing the content of an image for sexually explicit content is a fractious issue. We have previously held that "the statute requires more than mere nudity" because otherwise "the requirement of 'lasciviousness' would be superfluous." Amirault, 173 F.3d at 33. Yet, other circuits have found that nudity is not required for a lascivious exhibition. United States v. Horn, 187 F.3d 781, 789-90 (8th Cir. 1999); United States v. Knox, 32 F.3d 733, 745-46 (3d Cir. 1994). In the three images, the girls are nude and their genitals are clearly visible. The girls are posing for the camera, but the poses are neutral in the sense that the images would be unremarkable if the girls were clothed. The images are in the form of a portrait as the girls' bodies are the focus of the image with nothing of significance in the background. The images are jarring, more because of the cultural taboo regarding nude pictures of prepubescent girls than because of the specific portrayal of the

-29-

girls. In light of our cultural norms, the primary purpose of the three images appears to be the display of the girls' genitals. Regardless of whether or not the girls were exploited in the production of these images, the girls are being sexually exploited by the continued existence of these images.

I therefore believe that a reasonable jury could find that the three images lasciviously display the girls' genitals or pubic area in violation of 18 U.S.C. § 2252(a)(4)(B).

## II. Disagreements with the Majority

## A. The meaning of lascivious in the statute

Section I of the majority opinion exhorts that we should not elaborate on the meaning of "lascivious" in 18 U.S.C. § 2256(2)(A)(v). The majority states the statute "needs no adornment" and that "[f]urther definitional guides are not required." I disagree with the majority's reasoning and believe that we need to provide greater clarity as to Congress' intent in prohibiting child pornography.

Although the constitutionality of the federal child pornography statute is not an issue on appeal, the majority notes that the federal statute meets the constitutional requirements set out in Ferber, see 458 U.S. at 764-66, and that the statute is not unconstitutionally overbroad, see id. at 766-74. Although these legal conclusions are sound, the majority then applies them unsoundly. In sum, the majority argues that, since the statute is

-30-

constitutional, courts must not provide further guidance as to Congress' intent.[18]  I fail to see, however, how the satisfaction of constitutional requirements precludes federal courts in appropriate circumstances from saying precisely "what the law is." Marbury v. Madison, 5 U.S. 137, 177 (1803).  Courts routinely interpret the meaning of constitutional statutes, and this being an "appropriate circumstance," I see no reason to refrain from doing so here.[19]

The meanings of lewd and lascivious in the obscenity and child pornography statutes pose a difficult issue that requires clarification.  If the girls depicted in the three images were eighteen years old and this case arose under an obscenity statute, it is beyond dispute that no reasonable jury could find that the images lewdly display the genitals.[20]  We are now proceeding under

_____

[18]The majority also notes that other circuits have described lascivious as a "commonsensical term."  While I agree that the meaning of lascivious is, in large part, a matter of common sense, I do not see how this precludes us from providing further guidance as to Congress' intent.  Further, I reiterate that several circuits, including ours, have applied the Dost factors to supplement common sense.  See Amirault, 173 F.3d at 31.

[19]Other considerations could apply if the appeal raised First Amendment issues, but the only issue on appeal is whether the district court erred in holding that no reasonable jury could find that the three images are lascivious under the federal statute.  In discussing the standard of review, below, I explain in more detail why there is no constitutional question present on appeal.

[20]Because such images could not be obscene they could not be found to lewdly display the genitals.  Such images would clearly satisfy the first prong of Miller in that they would appeal to the "prurient interest" and would satisfy the third prong in that they

-31-

a child pornography statute and finding that a reasonable jury could find that the images lasciviously depict the genitals of the ten-to-twelve-year-old girls despite the fact that Supreme Court precedent suggests that lewd and lascivious are synonymous. See United States v. Excitement Video, Inc., 513 U.S. 64, 78-79 (1994). Because these two outcomes do not blithely arise from the plain text of the statutes, judicial elaboration of the meanings of "lewd" and "lascivious" is necessary.

The majority's exhortation to eschew further elaboration of the meaning of lascivious also runs counter to our binding circuit precedent in Amirault. In Amirault, we directly and clearly stated that district courts may use the Dost factors in determining whether an image is lascivious. Section IV of the Amirault opinion begins: "Using the Dost factors as guideposts, we turn now to the photograph to analyze whether it contains a lascivious exhibition of the genitals." Amirault, 173 F.3d at 33. The Amirault court then considered each of the Dost factors in turn and concluded that the image in question was not lascivious. Id. at 33-35. Below, the district court applied the Dost factors in

_____

would not have "serious literary, artistic, political, or scientific value." Miller v. California, 413 U.S. 15, 24 (1973). The images must then fail Miller's second prong and must not "depict[] or describe[], in a patently offensive way, sexual conduct specifically defined by the applicable state law." Id. The Miller court included "lewd exhibition of the genitals" as an example of a valid definition of patently offensive sexual conduct. Id. at 25. It is thus clear that such images of eighteen-year-old women could not be found to lewdly display the genitals.

-32-

the same way as we did in Amirault.  The majority, in holding that the district court inappropriately applied the Dost factors,[21] goes against Amirault and leaves First Circuit case law in a contradictory state.

The majority attempts -- unconvincingly, in my view -- to use procedural posture to distinguish the issue before us from other First Circuit cases applying the Dost factors.  See United States v. Hilton, 257 F.3d 50, 57-58 (1st Cir. 2001) (applying the Dost factors at a sentencing hearing); United States v. Brunette, 256 F.3d 14, 17-18 (1st Cir. 2001) (applying the Dost factors in determining the validity of a search warrant); Amirault, 173 F.3d at 30-31 (applying the Dost factors at a sentencing hearing).  The majority is correct in noting that no circuit court has approved the use of the Dost factors to exclude evidence on the grounds that no reasonable jury could find the images lascivious, but no circuit court has disapproved of such use either.  In my view, the Dost factors are either relevant or they are not.  If the Dost factors are relevant in determining whether images are lascivious in the context of a sentencing hearing, then they are also relevant in determining whether a reasonable jury could find that images are lascivious in a hearing to exclude evidence before trial.  The

---

[21]The majority states that the district court "gave the Dost factors greater weight than warranted" and "accorded to them the same status as the statutory definition itself."  I do not see, however, how the district court's application of the Dost factors differed significantly from that of the Amirault court.

majority has not provided any persuasive rationale for such a distinction.

**B.   The four corners rule in determining lasciviousness**

In discussing the deficiencies of the <u>Dost</u> factors, the majority criticized the district court for applying the "four corners rule" whereby factors external to the actual image, such as the circumstances surrounding the production of the image, are excluded from the determination as to whether an image is lascivious.  I agree with the majority that <u>Amirault</u> did not adopt such a rule, but I disagree with the majority's suggestion that the jury could consider the circumstances of the production of the image in determining lasciviousness.

First, the plain language of the statute is generally consistent with the four corners rule.  The statute prohibits the knowing possession of five specifically defined types of visual depictions.  In determining whether the possession of an image violates the statue, the fact finder must examine the content of the image.  The circumstances of the production of the image are relevant to punishing the producer of the image but are of dubious relevance in punishing the possessor of the image, who is likely ignorant of the details of its production.

Second, the use of factors beyond the four corners of the image in punishing the possessor of the image creates serious constitutional concerns.  The Court in <u>Ferber</u> made clear that

-34-

"criminal responsibility may not be imposed [for possession of child pornography] without some element of scienter on the part of the defendant." 458 U.S. at 765. Where the possessor of an image is ignorant of the circumstances of the production of the image, the scienter requirement may be violated.

While I would not categorically prohibit any evidence beyond the four corners of the image, only in rare situations will such evidence be relevant and not offend constitutional requirements.

## C. Description of the images

The majority's description of the three images contradicts the description given by the district court. I would adopt the district court's description of the images because it is more accurate. According to the majority, a reasonable jury could find that the images "focus[] or particularly draw[] attention to the girls' . . . vaginas" and that "each girl was deliberately posed to exhibit her pubic area." The majority further states that the girls' postures are not "particularly natural or spontaneous" and were not "comfortable." In contrast, the district court found that the "genitals or pubic area [were not] the focal point" of the images, that the "setting [was not] sexually suggestive at all," and that the poses were not "unnatural." My description of the images, above, comports with the description given by the district

court and more accurately represents the images than does the majority's description.

## D.  Standard of review

I agree with the majority that we review de novo the district court's holding that no reasonable jury could find the three images lascivious and also agree with the majority's reasoning.  The majority's justification for de novo review, however, is not the justification proffered by the parties.  Both parties argued that the First Amendment demands heightened review of the district court's holding.  The majority did not consider this rationale, and I write further to state explicitly that First Amendment heightened review does not apply to this case.  It is illustrative to consider three scenarios: the district court holds that (1) speech is unprotected; (2) speech is protected on constitutional grounds; and (3) speech is protected on statutory grounds.

## (1) Speech is unprotected

It is well established that "in cases raising First Amendment issues . . . an appellate court has an obligation to make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 499 (1984) (emphasis added and internal quotation marks omitted).  The appellate court must "be

-36-

sure that the speech in question actually falls within the unprotected category and . . . confine the perimeters of any unprotected category within acceptably narrow limits . . . to ensure that protected expression will not be inhibited." Id. at 505. There is no need to distinguish whether a district court held speech unprotected on statutory or constitutional grounds, because the former implies the latter.

**(2) Speech is protected on constitutional grounds**

The role of the appellate court is less clear where the district court holds that speech is protected on constitutional grounds. Some circuits have held that heightened First Amendment review is only necessary to protect speech and does not apply where the speech has already been protected. See Multimedia Publishing Co. v. Greenville-Spartanburg Airport Dist., 991 F.2d 154, 160 (4th Cir. 1993); Daily Herald Co. v. Munro, 838 F.2d 380, 383 (9th Cir. 1988); Planned Parenthood Association/Chicago Area v. Chicago Transit Authority, 767 F.2d 1225, 1228-29 (7th Cir. 1985). Other circuits have applied heightened review to all constitutional holdings defining the perimeters of unprotected categories of speech, regardless of whether the lower court held that speech was protected or unprotected. See Don's Porta Signs, Inc. v. City of Clearwater, 829 F.2d 1051, 1053 n.9 (11th Cir. 1987); Lindsay v. San Antonio, 821 F.2d 1103, 1107-08 (5th Cir. 1987). We have yet

to address the issue, and we need not address it now since the court's holding protecting speech was based on statutory grounds.

**(3) Speech is protected on statutory grounds**

The First Amendment determines the contours of the unprotected categories of speech and proscribes Congress from prohibiting protected speech. Congress, however, need not prohibit unprotected speech to the extent allowed by the constitution or even prohibit any unprotected speech at all. The extent of speech prohibited by a constitutional statute must be contained within the contours of an unprotected category. Speech may thus fall into three categories: (a) protected by the constitution, (b) unprotected by the constitution and not prohibited by statute, and (c) unprotected by the constitution and prohibited by statute.

Where a district court makes a purely statutory holding that specific speech is not prohibited by statute, the district court is holding only that Congress has chosen not to prohibit the speech in question. In such a situation, the district court is not deciding whether or not Congress could prohibit the speech in question, only that it chose not to. This purely statutory holding clearly has no bearing on the contours of unprotected categories of speech and thus no constitutional significance that would require heightened review.

Below, the district court's holding that no reasonable jury could find the three images lascivious was a purely statutory

holding. The district court did not consider the contours of the unprotected category of child pornography and thus did not consider whether the three images were unprotected speech. Thus, the district court held only that no reasonable jury could find that the three images violated the child pornography statute passed by Congress. Since no constitutional issue is present, First Amendment heightened review does not apply.[22]

Considering the above, I respectfully disagree with the majority's reasoning in this case but join in the reversal of the district court's order excluding the three images from evidence.

---

[22]Moreover, it is not clear whether heightened First Amendment scrutiny applies at all to interlocutory appeals. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 & n.23 (1984). In Seattle Times, the Supreme Court considered a First Amendment claim arising from a protective order issued during the discovery process and expressly refused to apply a heightened standard of review. Id. at 36. The Court was wary that heightened review "would necessitate burdensome evidentiary findings and could lead to time-consuming interlocutory appeals." Id. at 36 n.23. The perimeters of protected categories of speech are defined by final judgments but not by interlocutory decisions such as discovery orders and evidentiary rulings. See Lee v. DOJ, 413 F.3d 53, 58 (D.C. Cir. 2005).