OHLSON, Judge,
with whom BAKER, Chief Judge, joins (dissenting):
This case presents two questions. The first is whether Appellant had fair notice that his possession of the images charged under Specification 2 of the Additional Charge was subject to sanction under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2012), because it was prejudicial to good order and discipline and of a nature to bring discredit upon the armed forces. The second question is whether the images charged under Specification 2 of the Additional Charge are constitutionally protected because they do not meet the statutory definition of child pornography provided by the Child Pornography Prevention Act of 1996 (CPPA), 18 U.S.C. §§ 2252A-2260 (2012). If so, during the providence inquiry in the instant case the military judge was obligated to comply with the enhanced requirements of United States v. Hartman, 69 M.J. 467, 469 (C.A.A.F.2011).
For the reasons detailed below, I find that Appellant did have fair notice. I further find that the enhanced requirements of Hartman were not triggered because many of the images in the instant case meet a definition of prohibited child pornography that, although broader than the definition used in the CPPA, is still constitutionally permissible. Therefore, I respectfully dissent.
DISCUSSION
I. The Images
Specification 2 of the Additional Charge charged Appellant with possession of images of “nude minors and those appearing to be nude minors.” The images depict young prepubescent and pubescent girls in a variety of poses and locations who are either completely naked or wearing only hats or jewelry. In several images the young girls are lying on beds or couches, and in some of the images the heads of the girls are cropped so that the emphasis is on their genitals and breasts. In *390 one image a fully nude girl is posed lying on her side on a bed with her top leg splayed wide to display her genitals. One of her hands is placed on her hip with her elbow thrust upward. She is resting her body on her other elbow, and she has the tip of her finger dangling from her mouth as she looks directly at the viewer in a coy and sexual manner.
II. Fair Notice
In its opinion, the majority states: “We assume, without deciding, that Appellant had notice of the criminality of his conduct.” Despite the posture of this issue in the majority opinion, I deem it appropriate to briefly address the issue of fair notice at the outset of this dissent both because it is a foundational question and because it is one of the two specified issues for review.
All of the charges brought against Appellant arose under Article 134, UCMJ. Clauses 1 and 2 of Article 134, UCMJ, specifically authorize the armed forces to prosecute conduct that is not prohibited in other sections of the UCMJ if such conduct is “to the prejudice of good order and discipline in the armed forces” or “of a nature to bring discredit upon the armed forces.”
The prosecution of Article 134, UCMJ, offenses is a deeply rooted practice in the military justice system, and the propriety and constitutionality of such prosecutions has been ratified by the United States Supreme Court. In Parker v. Levy, the Court explained that “Congress is permitted to legislate both with greater breadth and with greater flexibility when prescribing the rules” for “military society.” 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). The Court also held, however, that due process requires that a defendant charged under Article 134, UCMJ, must have “fair notice” of the criminality of his or her conduct. Id. at 755-56, 94 S.Ct. 2547; see also United States v. Vaughan, 58 M.J. 29, 31 (C.A.A.F.2003) (citing United States v. Bivins, 49 M.J. 328, 330 (C.A.A.F.1998)).
In determining what constitutes “fair notice,” this Court has held that this due process requirement has been met if “any reasonable” member of the military would know that his or her conduct was prohibited. United States v. Sullivan, 42 M.J. 360, 366 (C.A.A.F.1995). In turn, the determination of whether a reasonable member would know that his or her conduct fell within the reach of Article 134, UCMJ, can be made by the application of common sense. United States v. Ashby, 68 M.J. 108, 119 (C.A.A.F.2009).
In light of these principles, in my view it is clear that Appellant had fair notice that his conduct fell within the ambit of Article 134, UCMJ, and thus was prohibited. Although the images knowingly possessed by Appellant may not meet the definition of child pornography under the provisions of the CPPA, many of these images certainly meet a common sense definition of child pornography. Therefore, consistent with Chief Judge Baker’s dissent in United States v. Warner, I conclude that “[a]ny reasonable member of the armed forces (in fact any member of the armed forces) of any grade or service would know that these pictures were service discrediting [and prejudicial to good order and discipline] based on the elements of Article 134, UCMJ, and common sense.” 73 M.J. 1, 4-5 (C.A.A.F.2013) (Baker, C.J., dissenting).
III. Child Pornography and the Constitution
The majority holds that there is a substantial basis in law and fact to question Appellant’s guilty plea because the images at issue in the instant case implicated constitutionally protected conduct. The majority further holds that the constitutional dimensions of this issue triggered the heightened plea inquiry requirements of Hartman and because the military judge did not comply with these requirements, Appellant’s guilty plea was not provident.
I do not agree with the majority that these images of nude pubescent and prepubescent girls in sexualized poses had any constitutional protection. I would therefore find that the Hartman providence inquiry requirements did not apply, and I would further find that the military judge did not abuse his discretion when he accepted Appellant’s guilty plea.
*391 Although the First Amendment protects Americans’ right to free speech, there are limits on the scope of its protection, particularly with regard to child pornography. The Supreme Court has held that child pornography can be criminalized by statute — even if it is not obscene — because of the harm that is done to the children who are used in the creation of the images. New York v. Ferber, 458 U.S. 747, 761, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); see also Paroline v. United States, — U.S. -, 134 S.Ct. 1710, 1716-17, 188 L.Ed.2d 714 (2014) (“The harms caused by child pornography ... are still more extensive because child pornography is a ‘permanent record’ of the depicted child’s abuse and ‘the harm to the child is exacerbated by [its] circulation.’” (alteration in original) (citation omitted)). The Supreme Court has provided additional guidance by stating that the possession of child pornography may be criminalized where the images depict a “lewd exhibition of nudity.” Osborne v. Ohio, 495 U.S. 103, 113-15, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990).[1]
Pursuant to the provisions of the GPP A, Congress has criminalized the creation, possession, and distribution of images that depict minors engaged in “sexually explicit conduct,” which is defined as including any “lascivious exhibition of the genitals.” 18 U.S.C. § 2256(2)(v). However, a plain reading of the Supreme Court’s decision in Osborne demonstrates that there are constitutionally acceptable definitions of child pornography that are broader than the definition used in the CPPA.[2] While the CPPA requires “the genitals or pubic area” to be on display, a “lewd exhibition of nudity” could involve other parts of the body and still pass constitutional muster. As the Supreme Court noted in Osborne, “We do not agree that [the] distinction between body areas and specific body parts is constitutionally significant: The crucial question is whether the depiction is lewd, not whether the depiction happens to focus on the genitals or the buttocks.” 495 U.S. at 114 n. 11, 110 S.Ct. 1691.[3]
*392 As can be seen then, the Supreme Court has not stated that the CPPA or the CPPA’s statutory definitions cover the entire field of images that may be criminalized as “child pornography.” Nevertheless, the majority opinion presents us with a binary choice: either a given image depicts a “lascivious exhibition of the genitals or pubic area” and is therefore child pornography, or that image is constitutionally protected under the First Amendment. As Chief Judge Baker stated in his dissent in Barberi, by so doing the Court has eliminated the “middle ground” 71 M.J. at 135 (Baker, C.J., dissenting). And yet, it is precisely that constitutional middle ground that I seek to defend.
Stated simply, I would hold in the instant case that although the images referred to in Specification 2 of the Additional Charge may not have met the statutory definition of child pornography contained within the provisions of the CPPA, that does not mean that Appellant had a constitutional right to possess those nude images of young girls in sexual-ized poses for his own sexual gratification. Thus, rather than apply the stricter Hartman analysis, I would look only at whether the military judge complied with the providence inquiry requirements spelled out in United States v. Care, 18 C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969), and I would conclude that he did. The record reflects that the military judge grasped the underlying issues, made good points about the limits of the CPPA and about the reach of the First Amendment, and sought to approach the issue in an informed and thoughtful manner. Further, the military judge questioned the accused about “what he did or did not do” such that the military judge was satisfied that there was a factual basis for Appellant’s plea. See Care, 18 C.M.A. at 541, 40 C.M.R. at 253. Thus, although I concede that the providence inquiry was not always a model of clarity, it sufficed in the instant context.
Moreover, I note that a military judge’s determination that an appellant’s plea was provident is reviewed for abuse of discretion. United States v. Inabinette, 66 M.J. 320, 322 (C.A.A.F.2008). We “afford significant deference” in this area because the “facts are by definition undeveloped in such eases.” Id. Here, the military judge reviewed each image that was found in Appellant’s possession. He placed in one category the images that met the CPPA definition of sexually explicit conduct. He then separated out any images that did not meet the broader definition of lewd or lascivious nudity. That process then left behind a collection of images that supported Specification 2 of the Additional Charge. Because I would find that the military judge did not use the incorrect legal standard, I find no reason to 0disturb his analysis of the images or his factual determination that the images depicted lewd exhibitions of nude minors sufficient to provide an adequate factual basis for Appellant’s plea. Therefore, I believe the appropriate disposition of the instant case would be to affirm the decision below.
Accordingly, I respectfully dissent.

. The terms "lewd” and "lascivious” are equivalent. United States v. Frabizio, 459 F.3d 80, 85 (1st Cir.2006) ("The Courts of Appeals have uniformly treated the terms 'lewd' and ‘lascivious’ as materially equivalent.”).

. Indeed, many states have enacted such definitions. See, e.g., Alaska Stat. Ann. §§ 11.61.123, 11.61.127 (West 2014) (noting that a person commits the crime of indecent viewing if he views a picture of the private exposure of the genitals, anus, or female breast of another person without consent); Ark.Code Ann. §§ 5-27-302, 5-27-304 (West 2014) (defining "[s]exually explicit conduct” as including the lewd exhibition of the genitals or pubic area of any person or the breast of a female); 720 Ill. Comp. Stat. Ann 5/11-20.1 (l)(vii) (West 2014) (defining "child pornography” to include possession of depictions of minors "portrayed in any pose, posture or setting involving a lewd exhibition of the unclothed or transparently clothed genitals, pubic area, buttocks, or, if such person is female, a fully or partially developed breast”); Kan. Stat. Ann. § 21 — 5510(d)(1) (West 2014) (defining "sexually explicit conduct" to include "lewd exhibition of the genitals, female breasts, or pubic area of any person”); Ky.Rev.Stat. Ann. § 531.300(4)(d) (West 2014) (defining "[s]exual conduct by a minor” to include the "exposure, in an obscene manner, of the unclothed or apparently unclothed human male or female genitals, pubic area or buttocks, or the female breast”); Mass. Gen. Laws Arm. ch. 272 § 29C(vii) (West 2014) (defining depictions of child sexual conduct to include the lewd exhibition of breasts); Mont. Code Ann. § 45-5-625(b) (2014) (including lewd depictions of female breasts and depictions of a nude child or partially nude children with the purpose to arouse or gratify sexual desires in the definition of sexual conduct); NJ. Stat. Ann. § 2C:24-4 (West 2014) (defining "[prohibited sexual act” to include nudity if depicted for the purpose of sexual stimulation or gratification); Okla. Stat. Ann. fit. 21 § 1024.1.A (West 2014) (including lewd depictions of female breasts in the definition of "child pornography”); Or.Rev. Stat. Ann. § 163.665 (West 2014) (defining "[s]exually explicit conduct” to include lewd exhibitions of sexual or other intimate parts); Tenn.Code Ann. § 39-17-1002.[8](G) (West 2014) (including lascivious exhibition of the female breast or genitals in the definition of "[s]ex-ual activity”); Tex. Penal Code Ann. § 43.25(a)(2) (West 2014) (including the lewd exhibition of any portion of the female breast below the top of the areola in the definition of "[s]exual conduct”).

.I agree with Chief Judge Baker’s suggestion in United States v. Barberi, that "we should look to Roderick to establish a clear definition of what constitutes child pornography for the purposes of clauses (1) and (2) of Article 134, UCMJ.” 71 M.J. 127, 135 (C.A.A.F.2012) (Baker, C.J., dissenting) (citing United States v. Roderick, 62 M.J. 425 (C.A.A.F.2006)). Using the Roderick analysis, the determination of whether an image of a nude minor constitutes "lewd nudity” can be *392 made "by combining a review of the Dost factors with an overall consideration of the totality of the circumstances.” 62 M.J. at 430. In this case, the military judge specifically addressed the Dost factors in the context of the facts of this case in determining whether Appellant's guilty plea to Specification 2 of the Additional Charge was provident. The military judge also took into account Appellant's admissions that he searched for images of naked children, he knew the images were child pornography when he downloaded them, he had dozens of similar images, the images excited his sexual desires, and he used them for his sexual gratification. This approach does not constitute a "common sense test." Rather, the Roderick analytical framework can be used to demonstrate that, using common sense, any reasonable member of the armed forces would know that possession of a picture of a nude child meeting many or all of the Dost factors, which was possessed for the purpose of sexual gratification, is service discrediting. Moreover, as noted infra, I conclude that there simply is no constitutional right to the possession of such pictures for the purpose of sexual gratification.