April 27, 2022

| | |
|---|---|
| State | : |
| v. | : |
| Madison Hansen. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State            :

v.           :

Madison Hansen.        :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Goldberg, for the Court.** This case came before the Supreme Court on December 1, 2021. The defendant, Madison Hansen (defendant or Hansen), appeals from a judgment of conviction of one count of possession of child pornography, following a bench trial. The trial justice found, beyond a reasonable doubt, that the defendant knowingly possessed digital images depicting minors engaging in sexually explicit conduct, in violation of G.L. 1956 § 11-9-1.3. The defendant asserts that the conviction violates his First Amendment right to free speech because, he contends, the images he possessed do not constitute child

- 1 -

pornography.  For the reasons stated in this opinion, the defendant's appeal is denied, and the judgment of conviction is affirmed.

## Facts and Travel

The defendant's conviction arose from his knowing possession of computer hard drives or digital storage media containing seventeen computer files of images. The defendant stipulated prior to trial to the knowing possession of these materials. In April 2018 the case proceeded to a jury-waived trial; the sole issue before the Superior Court was whether the state had proven beyond a reasonable doubt that some or all of the digital images constituted child pornography in accordance with § 11-9-1.3.[1]  The only evidence presented to the trial justice were the images that formed the basis of the charges and Hansen's stipulation that he knowingly

---

[1] Pursuant to G.L. 1956 § 11-9-1.3(a)(4), any person who "[k]nowingly possess[es] any * * * computer file or any other material that contains an image of child pornography" is in violation of the statute.

"Child pornography" is defined as "any visual depiction, including any photograph * * * or computer or computer-generated image * * * of sexually explicit conduct where * * * [s]uch visual depiction is a[n] * * * image of a minor engaging in sexually explicit conduct[.]" Section 11-9-1.3(c)(1)(ii).

"'Sexually explicit conduct' [includes] actual * * * [g]raphic or lascivious exhibition of the genitals or pubic area of any person[.]" Section 11-9-1.3(c)(6)(v).

"Graphic" is defined thereunder to mean "that a viewer can observe any part of the genitals or pubic area of any depicted person or animal during any part of the time that the sexually explicit conduct is being depicted." Section 11-9-1.3(c)(8).

- 2 -

possessed the images. After the parties rested, and prior to the trial justice's issuing a bench decision, the parties submitted written closing arguments.

On May 30, 2018, the parties reconvened for a bench decision. The trial justice found beyond a reasonable doubt that the images depicted minors and, after reviewing six of the seventeen images, concluded that those six images depicted minors engaging in sexually explicit conduct, as defined in § 11-9-1.3, amounting to a lascivious exhibition of the genitals or pubic area. The trial justice found it unnecessary to analyze the six images under any other definition of sexually explicit conduct and did not make any findings concerning the remaining eleven images. Based on the six images, Hansen was convicted of one count of possession of child pornography and sentenced to five years at the Adult Correctional Institutions, with one year to serve on home confinement and the balance suspended, with probation.[2] The defendant filed a timely appeal.

**Standard of Review**

Generally, "[a] judgment in a nonjury case will be reversed on appeal when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong."

---

[2] The defendant did not move to dismiss the February 23, 2016 criminal information charging him with one count of possession of child pornography in violation of § 11-9-1.3 pursuant to Rule 29 of the Superior Court Rules of Criminal Procedure, nor did he file a motion for a new trial pursuant to Rule 33 following the issuance of the bench decision at which he was found guilty of that charge.

*Lamarque v. Centreville Savings Bank*, 22 A.3d 1136, 1139-40 (R.I. 2011) (quoting *Cathay Cathay, Inc. v. Vindalu, LLC*, 962 A.2d 740, 745 (R.I. 2009)).

"A mixed question of law and fact is one in which the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard." *Johnston v. Poulin*, 844 A.2d 707, 714 (R.I. 2004) (quoting *Direct Action for Rights and Equality v. Gannon*, 819 A.2d 651, 662 (R.I. 2003)). While "[a] trial justice's findings on mixed questions of law and fact are generally entitled to the same deference as the justice's findings of fact[,]" *Cummings v. Shorey*, 761 A.2d 680, 684 (R.I. 2000), "we 'review *de novo* * * * mixed questions of law and fact insofar as those issues impact * * * constitutional matters[.]'" *Foley v. Osborne Court Condominium*, 724 A.2d 436, 439 (R.I. 1999) (quoting *State v. Campbell*, 691 A.2d 564, 569 (R.I. 1997)); *see State v. Lead Industries Association, Inc.*, 951 A.2d 428, 464 (R.I. 2008) (employing *de novo* review to "mixed questions of fact and law that purportedly implicate a constitutional right").

Specifically, when a party raises a First Amendment challenge, we "make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *Lead Industries Association, Inc.*, 951 A.2d at 464 (quoting *Bose Corporation v. Consumers Union of United States, Inc.*, 466 U.S. 485, 499 (1984)); *see Roth v. United States*, 354 U.S. 476, 497 (1957) (Harlan, J., concurring in part and

- 4 -

dissenting in part) (stating that "a reviewing court must determine for itself whether the attacked expression is suppressable within constitutional standards"); *see also United States v. Amirault*, 173 F.3d 28, 33 (1st Cir. 1999) (applying *de novo* review to an image found to depict child pornography); *Commonwealth v. Bean*, 761 N.E.2d 501, 507 (Mass. 2002) (recognizing that "cases involving speech under the First Amendment require independent appellate review of the offending material to ensure that protected speech is not infringed").

## Discussion

Before this Court, defendant argues that the trial justice's decision, deeming the six images as depictions of lascivious exhibitions of genitals or pubic areas, "fell short of the constitutional mark because it unlawfully encroached upon the long-established prohibition of criminalizing non-sexualized images of the human body, a protected form of speech." Accordingly, the issue of whether defendant maintains a First Amendment right to possess the images at issue—that is, whether the images depict protected speech or they depict unprotected child pornography within the meaning of § 11-9-1.3—is a mixed question of law and fact that is entitled to our independent, *de novo* review.[3] *See Bean*, 761 N.E.2d at 507

---

[3] We pause to note that, in the context of a jury trial, it is incumbent upon the trial justice to conduct a pretrial hearing to determine, in the first instance, whether the depictions should be presented to the jury, with an immediate appeal of an adverse decision. *See United States v. Frabizio*, 459 F.3d 80, 86 (1st Cir. 2006) (reviewing images prior to consideration by the jury to determine if a reasonable juror could

(conducting an independent, *de novo* review of the material in an appeal following a bench trial); *see also Lead Industries Association, Inc.*, 951 A.2d at 464; *Johnston*, 844 A.2d at 714.

A

**Evolution of the Prohibition of Child Pornography**

The United States Supreme Court opinion in *New York v. Ferber*, 458 U.S. 747 (1982), is the cornerstone to understanding whether a depiction falls within the meaning of a statute that prohibits the production, distribution, or possession of child pornography. *See, e.g.*, *United States v. Frabizio*, 459 F.3d 80, 83 (1st Cir. 2006) (considering the interpretation of a child pornography statute in the context of *Ferber*). This benchmark holding firmly established that child pornography is "a category of material outside the protection of the First Amendment[.]" *Ferber*, 458 U.S. at 763.

In *Ferber*, the United States Supreme Court declared that the government has a compelling interest—of "surpassing importance" to First Amendment protections—in "safeguarding the physical and psychological well-being of

---

find the images to constitute lascivious exhibitions of the genitals or pubic area); *see also United States v. Rayl*, 270 F.3d 709, 714 (8th Cir. 2001) (noting that the trial court "should conduct a preliminary review of whether materials offered by the government for this purpose depict sexually explicit conduct as a matter of law"); *United States v. Knox*, 32 F.3d 733, 738 (3d Cir. 1994) (holding a pretrial hearing to determine if the indictment was sufficient on the issue of the exhibition of the genitals or pubic area in the photographs).

[children]" and in preventing sexual exploitation and abuse of children. *Ferber*, 458 U.S. at 756-57. Precisely, the Supreme Court concluded that "the evil to be restricted so overwhelmingly outweighs the expressive interests, if any, at stake" as professed by the holder of child pornography.[4] *Id.* at 763-64. The Supreme Court also recognized that the distribution of child pornography created a permanent damning record of the child, which was exacerbated by the circulation of the material, such that in order to control production, the distribution network must be closed. *Id.* at 759. Although the advertising, production, and distribution of child pornography are driven by economic motivations, *id.* at 761, it is the *possession* of child pornography that creates the market demand assigning value up that supply chain. *See United States v. Harris*, 358 F.3d 221, 222 (2d Cir. 2004) (recognizing that the local production of child pornography "feeds the national market and stimulates demand" and its possession is indistinguishable).

---

[4] *New York v. Ferber*, 458 U.S. 747 (1982), is not the first case where the United States Supreme Court determined that the governmental interest in protecting the welfare of children surpassed the interest of protecting the freedom of speech. *See Federal Communications Commission v. Pacifica Foundation*, 438 U.S. 726, 749 (1978) (holding that the government's interest in protecting the well-being of youth by prohibiting indecent broadcasts surpassed the right to free speech); *see also Prince v. Massachusetts*, 321 U.S. 158, 160-61, 164, 165, 168, 169, 170 (1944) (holding that a statute prohibiting the use of a child to distribute literature on the street did not offend the First Amendment); *United States v. Wiegand*, 812 F.2d 1239, 1243 (9th Cir. 1987) (recognizing that "[i]n the protection of children otherwise privileged expressions may be affected") (citing *Pacifica Foundation*, 438 U.S. at 749).

Under *Ferber*, all child pornography is considered unprotected from the shield of free speech—"even that which is *not obscene* under the standard set forth in *Miller v. California*, 413 U.S. 15 * * * (1973)[.]" *Frabizio*, 459 F.3d at 84 (emphasis added) (citing *Ferber*, 458 U.S. at 761). In *Miller*, the Supreme Court set forth basic guidelines for the trier of fact to determine whether material is obscene, including:

> "(a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." *Miller*, 413 U.S. at 24 (internal quotation marks and citations omitted).

After noting the substantial inapplicability of this test to the question of whether a depiction can be considered child pornography, the Supreme Court in *Ferber* drastically narrowed the *Miller* test as it relates to child pornography to sexual conduct "adequately defined by the applicable state law" and added an element of scienter. *Ferber*, 458 U.S. at 764, 765; *see also Bean*, 761 N.E.2d at 507-08 (determining that the fact that an image is neither obscene nor pornographic "is not relevant on the question whether the nudity depicted falls within the scope of the statutory definition"). As a result, in the context of

> "works that *visually* depict sexual conduct by children[,]
> * * * [a] trier of fact need not find that the material

appeals to the prurient interest of the average person; it is not required that sexual conduct portrayed be done so in a patently offensive manner; and the material at issue need not be considered as a whole." *Ferber*, 458 U.S. at 764.

After *Ferber*, a plethora of federal and state legislation was advanced based on the compelling need to safeguard children from the dire consequences of sexual exploitation. *See* Child Protection Act of 1984, 18 U.S.C. § 2251, as enacted by Pub. L. No. 98-292, 98 Stat. 204, § 2; *see also* 98 Cong. Rec. S7197, S7198 (daily ed. Mar. 30, 1984). Since then, significant judicial resources have been devoted to the interpretation of child pornography statutes. *See, e.g.*, *Frabizio*, 459 F.3d at 84, 85 (citing to multiple cases that have interpreted language of child pornography statutes).

For instance, in *United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), in support of that court's reasoning that a depiction falls within the meaning of a lascivious exhibition, in accordance with 18 U.S.C. § 2256, the court characterized the harms exposed in *Ferber* as a "trespass against the dignity of the child." *Wiegand*, 812 F.2d at 1245. In part, the court in *Wiegand* opined that:

> "The crime punished by the statutes against the sexual exploitation of children * * * is the offense against the child—the harm to the physiological, emotional, and mental health of the child, the psychological harm; the invasion of the child's vulnerability. These harms collectively are the consequential damages that flow from the trespass against the dignity of the child.

"* * *

"Human dignity is offended by the pornographer. American law does not protect all human dignity; legally, an adult can consent to its diminishment. When a child is made the target of the pornographer-photographer, the statute will not suffer the insult to the human spirit, that the child should be treated as a thing." *Id.* (internal quotation marks and citations omitted).

In response to *Ferber*, Congress amended and renamed the Protection of Children Against Sexual Exploitation Act of 1977 as the Child Protection Act of 1984, cited *supra*. The Child Protection Act of 1984 provided:

"The Congress finds that—

"(1) child pornography has developed into a highly organized, multi-million-dollar industry which operates on a nationwide scale;

"(2) thousands of children including large numbers of runaway and homeless youth are exploited in the production and distribution of pornographic materials; and

"(3) the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the individual child and to society." 18 U.S.C. § 2251, Congressional Findings, Pub. L. No. 98-292, 98 Stat. 204, § 2.

Then, in enacting the Child Pornography Prevention Act of 1996, Congress set forth further findings, providing, in part, that: "[T]he use of children in the production of sexually explicit material * * * is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved * * *

- 10 -

[and] causes * * * continuing harm by haunting those children in future years";
"child pornography is often used as part of a method of seducing other children
into sexual activity"; "child pornography * * * invades the child's privacy and
reputational interests * * * [by] haunt[ing] the minor for years to come";
sexualized images of minors "encourag[e] a societal perception of children as
sexual objects and lead[s] to further sexual abuse and exploitation of them"; and
"the elimination of child pornography and the protection of children from sexual
exploitation provide a compelling governmental interest for prohibiting the
production, distribution, possession, sale, or viewing of visual depictions of
children engaging in sexually explicit conduct[.]" 18 U.S.C. § 2251, Congressional
Findings (1996).

In 2001 the Rhode Island General Assembly enacted § 11-9-1.3, which
closed a gap in the then-existing "[e]xploitation for commercial or immoral
purposes" provision of § 11-9-1, by criminalizing the possession of child
pornography.[5] *Compare* § 11-9-1(b), (c), *with* § 11-9-1.3(a). The enactment of
§ 11-9-1.3 engrafted the "lascivious exhibition" language from its federal
counterpart. *Compare* § 11-9-1.3(c)(6)(v), *with* 18 U.S.C. §§ 2252(a), 2256.

---

[5] Prior to the enactment of § 11-9-1.3, it was a violation of state law to produce, sell, or distribute material depicting a minor engaging in sexual acts, pursuant to § 11-9-1, but a violation of federal law only to possess such material, 18 U.S.C. § 2252(a)(4)(B).

Therefore, when analyzing § 11-9-1.3, we look to the principles set forth in *Ferber* and further developed across the nation. *Cf. Narragansett Electric Company v. Rhode Island Commission for Human Rights*, 118 R.I. 457, 459-60, 374 A.2d 1022, 1023 (1977) (looking to the federal act for guidance relating to the meaning of a state statute where the language was nearly identical). The salutary goal of safeguarding the well-being of children by preventing sexual exploitation are factors in the calculus of whether a depiction fits within the definition of § 11-9-1.3, and should serve as the focal point from which all other considerations are measured. Thus, we are satisfied that, by adopting language identical to its federal counterpart, the General Assembly intended that § 11-9-1.3 serve the same purposes specifically expressed in 18 U.S.C. § 2251, and that those purposes provide context to the phrase "lascivious exhibition" in the statute.

**B**

**Statutory Interpretation, G.L. 1956 § 11-9-1.3**

In discerning the meaning of statutory language, we look to the general principles of statutory interpretation. *See State v. Greenberg*, 951 A.2d 481, 489 (R.I. 2008). "[I]t is this [C]ourt's responsibility in interpreting a legislative enactment to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." *Id.* (quoting *Brennan v. Kirby*, 529 A.2d 633, 637 (R.I. 1987)). "This is

particularly true where the Legislature has not defined or qualified the words used within the statute." *Barrett v. Barrett*, 894 A.2d 891, 897 (R.I. 2006) (quoting *D'Amico v. Johnston Partners*, 866 A.2d 1222, 1224 (R.I. 2005)). First, we "look to the plain and ordinary meaning of the statutory language[,]" and, "[i]f the language is clear on its face, then the plain meaning of the statute must be given effect and this Court should not look elsewhere to discern the legislative intent." *Greenberg*, 951 A.2d at 489 (quoting *Henderson v. Henderson*, 818 A.2d 669, 673 (R.I. 2003)).

Pursuant to § 11-9-1.3, the knowing possession of child pornography, which is defined to include a visual depiction such as a digital image, "of a minor engaging in sexually explicit conduct[,]" is a felony crime. Sections 11-9-1.3(a)(4), 11-9-1.3(c)(1)(ii).[6] The definition of "sexually explicit conduct" includes a

---

[6] Section 11-9-1.3 provides, in part, that: "It is a violation of this section for any person to * * * [k]nowingly possess any * * * computer file or any other material that contains an image of child pornography." Section 11-9-1.3(a)(4). "Child pornography" is defined as

> "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct where:
> "(i) The production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

- 13 -

"lascivious exhibition of the genitals or pubic area of any person[.]"[7] Section 11-9-1.3(c)(6)(v).

The determination of whether an image constitutes a lascivious exhibition is a case-specific inquiry. *See Frabizio*, 459 F.3d at 85; *see also Amirault*, 173 F.3d at 32. The question of whether the materials at issue depict lascivious exhibitions of the genitals or pubic area is generally left for the finder of fact, *Frabizio*, 459 F.3d at 85, but "the meaning of 'lascivious exhibition of the genitals [or pubic area]' is an issue of law." *United States v. Rayl*, 270 F.3d 709, 714 (8th Cir. 2001); *see United States v. Knox*, 32 F.3d 733, 744 (3d Cir. 1994). Although left undefined in the statute, the phrase "lascivious exhibition of the genitals or pubic area" has been

---

> "(ii) Such visual depiction is a digital image, computer image, or computer-generated image of a minor engaging in sexually explicit conduct; or
> "(iii) Such visual depiction has been created, adapted, or modified to display an identifiable minor engaging in sexually explicit conduct." Section 11-9-1.3(c)(1).

[7] Section 11-9-1.3(c)(6) defines "[s]exually explicit conduct" as

> "(i) Graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, or lascivious sexual intercourse where the genitals, or pubic area of any person is exhibited;
> "(ii) Bestiality;
> "(iii) Masturbation;
> "(iv) Sadistic or masochistic abuse; or
> "(v) Graphic or lascivious exhibition of the genitals or pubic area of any person[.]"

addressed in numerous cases.[8]  Nevertheless, "[t]he dictionary definition [of lascivious] is of little help in drawing lines." *United States v. Rivera*, 546 F.3d 245, 249 (2d Cir. 2008) (footnote omitted).

"'Lascivious' is a 'commonsensical term,'" *Frabizio*, 459 F.3d at 85 (quoting *Wiegand*, 812 F.2d at 1243), and the question of whether an image comports with this meaning is one in which a person "of reasonable intelligence, guided by common understanding and practices" is capable of navigating. *Frabizio*, 459 F.3d at 85 (quoting *United States v. Freeman*, 808 F.2d 1290, 1292 (8th Cir. 1987)).  Although we undertake an independent review, we also recognize that, unlike a credibility determination, "[t]he fact finder is in no better position to evaluate the content and significance of the[] photographs than an appellate court." *Bean*, 761 N.E.2d at 507 n.15.

In the case at bar, all of the children in the images are completely naked, with the exception of sneakers, sandals, or jewelry, and their pubic areas are

---

[8] In the context of child pornography, the meaning of "lascivious" has been equated with the term "lewd[.]" *See Frabizio*, 459 F.3d at 85 (citing *United States v. Adams*, 343 F.3d 1024, 1035 (9th Cir. 2003)); *see also Knox*, 32 F.3d at 748 n.12; *Wiegand*, 812 F.2d at 1244.  However, the word "lascivious" is commonly substituted for the word "lewd" in order to avoid the inference that, to be considered child pornography, an image must meet the obscenity standard enunciated in *Miller v. California*, 413 U.S. 15 (1973). *See Frabizio*, 459 F.3d at 84-85 n.7.  It need not. *See Ferber*, 458 U.S. at 761, 764-65; *see also Frabizio*, 459 F.3d at 84-85 n.7; *United States v. Dost*, 636 F. Supp. 828, 831 (S.D. Cal. 1986) (*Dost I*); 130 Cong. Rec. S3511 (daily ed. Mar. 30, 1984) (statement of Senator Arlen Specter).

clearly visible and genitals are partially visible; the images capture the full-frontal nude body of each child. There is no question in this case that the genitals or pubic areas of the prepubescent girls in the images are on display, or in other words, that there is an exhibition of the genitals or pubic areas. Thus, the only issue before us is whether those exhibitions of the genitals and pubic areas are lascivious.

## C

### The *Dost* Factors

In support of their opposing arguments as to whether these images constitute child pornography, the state and defendant rely upon the factors set forth in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986) (*Dost I*), which were formulated to determine whether an image portrayed a lascivious exhibition of genitals or pubic area (*Dost* factors).[9] *Dost I*, 636 F. Supp. at 832, *aff'd sub nom. Wiegand*, 812 F.2d 1239, *cert. denied*, 484 U.S. 856 (1987).

In *Dost I*, two defendants, Robert S. Dost and Edwin E. Wiegand, were indicted for production and distribution of child pornography in violation of 18 U.S.C. § 2251(a) and 18 U.S.C. § 2252(a)(2). *Dost I*, 636 F. Supp. at 829-30. Upon conviction, the defendants filed separate appeals, resulting in *United States*

---

[9] In the Superior Court, both parties utilized the factors set out in *Dost I* as the basis of their analysis of the images at issue, due to the guidance that *Dost I* has provided throughout the country. The trial justice found the *Dost* factors to be highly instructive and concluded that it was appropriate to consider these factors in his determination of whether the images were lascivious.

*v. Dost*, 813 F.2d 1231 (9th Cir. 1987) (*Dost II*) and *Wiegand*, cited *supra*. In each appeal the conviction was affirmed, and the United States Supreme Court denied Wiegand's petition for certiorari. *Wiegand*, 484 U.S. at 856. Both *Dost I* and *Wiegand* are often looked to as guidance on the subject of child pornography and, more specifically, for analysis of the term "lascivious[.]" *See, e.g.*, *Frabizio*, 459 F.3d at 83, 84, 85, 87, 88, 89.

Although the *Dost* factors may provide "some guidance[,]" they are neither exclusive, "comprehensive[,] nor necessarily applicable in every situation." *Amirault*, 173 F.3d at 32; *see Frabizio*, 459 F.3d at 87. Notably, the court in *Wiegand* found that the *Dost* factors generously narrowed the meaning of lascivious by going "beyond what is necessary to find the picture[s] within the statutory definition." *Wiegand*, 812 F.2d at 1244. The First Circuit has also cautioned against an over-reliance on the *Dost* factors, recognizing the risk that such reliance can lead to an "inappropriate[] limit[ation] * * * of the statutory definition." *Frabizio*, 459 F.3d at 88. "The statutory standard needs no adornment." *Id.* at 85. Because these factors "are not the equivalent of the statutory standard of 'lascivious exhibition[,]' [they] are not to be used to limit the statutory standard." *Id.* at 90; *cf. Ferber*, 458 U.S. at 764 (limiting the *Miller* obscenity standard to works that depict sexual conduct specifically defined by the applicable state law). Embracing the same caution, we look to—yet we decline to

- 17 -

adopt—the factors set forth in *Dost I* and echo these cautionary observations. *See Frabizio*, 459 F.3d at 90; *see also Wiegand*, 812 F.2d at 1244.

In *Dost I*, when "determining whether a visual depiction of a minor constitute[d] a 'lascivious exhibition of the genitals or pubic area[,]'" the court looked to the following factors:

> "1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> "2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
>
> "3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> "4) whether the child is fully or partially clothed, or nude;
>
> "5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
>
> "6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Dost I*, 636 F. Supp. at 832.

Importantly, in *Dost I*, the court also cautioned that there may be other factors equally relevant in a particular case, such that the determination of lasciviousness should be "based on the overall content of the visual depiction, taking into account the age of the minor"; and that, in many instances, some factors may not apply. *Id.* (recognizing that, "because of [a child's] innocence in matters sexual," sexual coyness may be presumed to be immaterial depending on the child's age).

- 18 -

We note, however, that there are general principles that should be considered in determining whether the totality of the depiction is lascivious. First, while nudity alone does not constitute sexually explicit conduct, *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 84 (1994) (Scalia, J., dissenting) (discussing 18 U.S.C. § 2256(c)); *Osborne v. Ohio*, 495 U.S. 103, 112 (1990), nudity is not a necessary component of a lascivious exhibition of the genitals or pubic area. *Knox*, 32 F.3d at 737, 744, 746 (determining that "lascivious exhibition" should not be conflated to mean nude or naked exhibition). In addition, the absence of a sexually alluring look from a child "does not mean that an image is not lascivious[.]" *Frabizio*, 459 F.3d at 89.

Significantly, "[i]n the context of the statute applied to the conduct of children, lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or like-minded pedophiles[.]" *Knox*, 32 F.3d at 747 (quoting *Wiegand*, 812 F.2d at 1244); *see United States v. Wolf*, 890 F.2d 241, 247 (10th Cir. 1989) (holding that "a sexually exploitative photograph of a child need not portray the victim in a pose that depicts lust, wantonness, sexual coyness or other inappropriate precocity") (internal quotation marks omitted).

Also, while one blatantly lewd factor may be sufficient to consider an image lascivious, a sliding-scale approach may require the presence of a number of

factors. *See Frabizio*, 459 F.3d at 88 (recognizing a split among circuits regarding how many *Dost* factors must be present); *see also Wolf*, 890 F.2d at 245 n.6, 247 (holding that "not all of the *Dost* factors need be present in order for a sexually exploitative photograph of a child to come within the constitutional reach of the statute" and noting that the court did "not hold that more than one *Dost* factor must be present"); *United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989) (concluding that "[a]lthough more than one factor must be present in order to establish 'lasciviousness,' all six factors need not be present"); *Dost I*, 636 F. Supp. at 832 (considering that a number of factors may create a "combined effect * * * designed to elicit a sexual response in the viewer").

This Court has yet to consider the proper standard for evaluating whether a visual depiction is intended or designed to elicit a sexual response in the viewer— whether one that considers the objective criteria of the photograph's design or an evaluation that considers the viewer's subjective reaction to the photograph or intent in viewing an image. *See Amirault*, 173 F.3d at 34-35. We are of the opinion, however, that the subjective reaction or intent of the viewer implicates a scienter element that is not required in the statute. *See* § 11-9-1.3; *see also Frabizio*, 459 F.3d at 89 (declining to adopt a rule not required by the statute); *Amirault*, 173 F.3d at 34, 35 (implementing a standard that looks to the objective criteria of the photograph's design and noting that "a focus on the photograph's use

- 20 -

seems inconsistent with the statute's purpose of protecting the child"); *Villard*, 885 F.2d at 125 (examining the photograph to determine its *intended effect* on the viewer, rather than the viewer's actual response). Therefore, we conclude that it is appropriate to look to objective criteria within the composition to determine whether a visual depiction is designed to elicit a sexual response in the viewer.[10]

Most notably, however, all factors must be considered in light of the purpose that underlies criminalizing possession of child pornography, to protect children from sexual exploitation, and in the context of advancing the state's compelling interest, to safeguard the well-being of children as proclaimed in *Ferber*. *See Ferber*, 458 U.S. at 756-57; *see also Commonwealth v. Rex*, 11 N.E.3d 1060, 1069-70 (Mass. 2014) (considering "the *Dost* factors in the context of the Legislature's purpose in enacting [the child pornography statute], namely to protect children from sexual exploitation").

**D**

**The Images**

Before we turn to our independent review of the images at issue, we first address Hansen's assertions that the images before us merely portray nude beauty

---

[10] In relation to the sixth *Dost* factor, whether the visual depiction is intended or designed to elicit a sexual response in the viewer, courts have found this factor elusive in the context of cases involving possession of child pornography and more relevant in cases involving its production. *See United States v. Rivera*, 546 F.3d 245, 252 (2d Cir. 2008).

pageants by cultural nudists, occurring at family nudist retreats.[11] We decline to incorporate these assumptions into our independent review. Hansen presented no evidence during trial, through testimony or otherwise, to support them. *Compare Commonwealth v. Sullivan*, 972 N.E.2d 476, 486-87 (Mass. App. Ct. 2012) (noting the lack of evidence presented that would indicate that the images depicted anything but a lewd exhibition of the girl's breasts and pubic area), *with Bean*, 761 N.E.2d at 508 (considering the testimony of the defendant's expert in art history connoting that the images "appear[ed] intended to have an artistic quality independent of their specific subject matter").

Additionally, notwithstanding defendant's suggestion that this Court "must undertake its own constitutional analysis of the photographs vis-à-vis the *Dost* factors[,]" we are not so inclined to usurp the fact-finding function of the trial justice, which defendant elected when he knowingly and voluntarily waived a jury trial. *See State v. Lussier*, 186 A.3d 581, 586 (R.I. 2018). Rather, in accordance with this Court's decision in *State v. Dunn*, 726 A.2d 1142 (R.I. 1999), the proper avenue to vacate a judgment and allow the trial justice to reconsider the evidence

---

[11] In particular, Hansen argues that the trial justice's decision "analyzes the naturist lifestyle and pre-teen and teenage beauty pageants through the lens of personal squeamishness instead of objective reality"; and that the images portray "people celebrating an alternative lifestyle[,]" a "naturist pageant[,]" "cultural nudism[,]" "teenage cultural nudists partaking in a non-sexual pageant[,]" "family nudist retreats[,]" and "a group of families who possess similar beliefs about nudism[,]" and capture a "contest taking place at a nudist retreat."

or "take additional testimony and direct the entry of a new judgment" is by motion of the defendant for a new trial pursuant to Rule 33 of the Superior Court Rules of Criminal Procedure. *Dunn*, 726 A.2d at 1146. However, as noted *supra*, Hansen did not move for a new trial. While this Court "make[s] an independent examination of the whole record[,]" *Lead Industries Association, Inc.*, 951 A.2d at 464 (quoting *Bose Corporation*, 466 U.S. at 499), we do not engage in *de novo* fact finding or look to facts outside of those set forth in the record. *See Lussier*, 186 A.3d at 586; *see also Niedwicki v. Belasco*, 49 R.I. 417, 142 A. 228, 229 (1928). We, therefore, confine our analysis to the images in question.

After determining that all of the images depict prepubescent minor females, the trial justice described the images as follows:

> "Exhibit * * * A * * * is a black and white photo of a young child. The photo captures the naked body of the child beginning above the knees with her face turned away. The child is holding a card with the number '6.' * * * [H]er eyes [are] closed looking away from the camera and with a smirk on her face. * * *
>
> "Exhibit * * * B * * * is another black and white image of what appears to be the same child from Exhibit * * * A. This picture is of her entire body, which is completely naked, she is holding the number '6' in her right hand and not looking at the camera. Her face is facing right[,] and she has a smirk on her face. Behind the child in the picture is another naked young child looking at her and adult middle-aged females with their bare breasts exposed. * * *

"Exhibit * * * D * * * shows nine nake[d] children with seven middle-aged naked men and women sitting around them. One of the naked men behind the children has a large smile on his face. The children are all * * * holding number cards in the[ir] hands. * * *

"[Exhibit] * * * E * * * is similar to * * * D showing nine naked children with one middle-aged naked man with a large smile on his face. The children are all * * * holding number cards in their hands. * * *

"[Exhibit] * * * N * * * shows a young naked child. Her undeveloped breasts and pubic area are clearly shown on the image. In addition, her head is tilted and she is smiling * * *. She is also holding a number four in her right hand[.] * * *

"Exhibit * * * O * * * sho[w]s a young naked child and her undeveloped breasts and pubic area are clearly shown. In addition, the child is looking away from the camera with a smile on her face. * * *"[12]

---

[12] Each of the six images at issue are identified in the record transmitted to this Court on appeal by an Exhibit letter, a Bench Decision Exhibit letter, and a File Name, as follows: Exhibit A, Bench Decision Ex. O, File Name "NC-BW 74"; Exhibit D, Bench Decision Ex. A, File Name "NC-BW 69"; Exhibit E, Bench Decision Ex. B, File Name "NC-BW 72"; Exhibit G, Bench Decision Ex. D, File Name "russianbare010815-01-01"; Exhibit H, Bench Decision Ex. E, File Name "russianbare010815-01-27"; and Exhibit Q, Bench Decision Ex. N, File Name "russianbare010815-03-01." For purposes of remaining consistent with the trial justice's identifications within the transcript, we identify the images as the trial justice did, by the corresponding Bench Decision Exhibit letter.

Having reviewed the six images and the trial justice's findings, we are satisfied that each image constitutes a lascivious exhibition of the pubic area of each minor subject therein, within the meaning of § 11-9-1.3(c)(6)(v).[13]

The defendant argues that none of the six images can be considered lascivious under the *Dost* factors. Hansen also suggests that the trial justice found that the other eleven images were "non-pornographic" and that the similarity of those images to the six at issue points to the arbitrariness of the trial justice's decision. We reject this argument. The trial justice made no findings whatsoever in relation to the lasciviousness of the remaining images; nor does this contention warrant this Court's review. Because Hansen was charged with a single count of possession of child pornography, no more than one image was required to support a conviction. *See* § 11-9-1.3. There are six.

Turning to the first factor,[14] defendant first argues that the children's genitalia or pubic areas are not the focal point in the images because no part of the children's anatomy is highlighted by the setup of the images, when compared to close-ups of the child's pubic area in *United States v. Holmes*, 814 F.3d 1246 (11th

---

[13] There is no question that the fourth *Dost* factor—"whether the child is fully or partially clothed, or nude[,]" *Dost I*, 636 F. Supp. at 832—is satisfied; all of the girls in the images are fully nude, other than sneakers, sandals, or jewelry. Hansen conceded this point before trial.

[14] The first *Dost* factor is "whether the focal point of the visual depiction is on the child's genitalia or pubic area[.]" *Dost I*, 636 F. Supp. at 832.

Cir. 2016), which were found to be the focal point. *See Holmes*, 814 F.3d at 1252. We disagree that a close-up of the genitals or pubic area is necessary to satisfy the focal-point factor. While the visibility of the genitals or pubic area should not be "merely an inherent aspect of the fact that [the children] are naked[,]" *Rex*, 11 N.E.3d at 1071, genitals or pubic areas that are plainly visible, with some characteristic of the composition drawing attention to these areas of the body, will satisfy this factor. *See Frabizio*, 459 F.3d at 86 (nude female, with legs parted and pubic area plainly visible could satisfy focal-point factor); *see also Knox*, 32 F.3d at 747 (genitals and pubic areas of females, covered by opaque clothing, while spreading or extending legs to make these areas visible to the viewer satisfied focal-point factor); *Wolf*, 890 F.2d at 243 (nude pubic area with light focused on victim's genitals satisfied factor).

The defendant also attempts to draw a comparison between the images at issue and those in *Rex* relative to the focal-point factor in *Dost I*. In *Rex*, the court determined that in none of the images were the children's genitalia the focal point of the visual depiction but were rather "an inherent aspect of the fact that [the children were] naked." *Rex*, 11 N.E.3d at 1071. Notably, the court in *Rex* also determined that, out of the seven images at issue (all of which were no greater in size than two by three inches), the genitals were only visible in three of the images, were not at all visible in two of the images, and not clearly visible in the remaining

two. *See id.* at 1070, 1071. Nothing in the photographs, where the genitals or pubic areas were visible, drew attention to them. *See id.* In addition, five of the images were from a nudist recreation catalogue, one was from a *National Geographic* magazine, and the other from a sociology textbook. *Id.* at 1065 n.7. Importantly, no other factor weighed in favor of a finding that any of the images were lewd. *See id.* at 1071. We disagree that *Rex* supports defendant's contentions in this case.

In the case at bar, the trial justice determined that, in combination with other factors, the focal point of Exhibit A is the child's breasts and pubic area and that, in Exhibits N and O, the children's undeveloped breasts and pubic areas are clearly visible. While we affirm the trial justice's findings, our independent review of these images takes us a step further, as the devil is in the details.

Each of the six images introduced by the state depict prepubescent nude girls, each of whom are awkwardly gripping a numbered card at the side of her body, adjacent to her hip, next to her undeveloped pubic area. In four of the images, the child is posed alone;[15] the other two images each depict a lineup of nine girls;[16] and, in all six images, the pubic areas are fully exposed and clearly visible. The awkward placement of the number cards, directly adjacent to the

[15] These four images are identified as Exhibits A, B, N, and O.

[16] These two images are identified as Exhibits D and E.

subjects' exposed pubic areas, serves to draw attention to the genital and pubic areas. In each of the four images with a lone subject, the child's pubic area is featured in the vertical center of the composition. Notably, each subject was captured with her long hair mostly behind the shoulders, to avoid covering their undeveloped breasts. With the hair to the back and number cards to the side—and not the front of the body—the fully exposed breasts and pubic areas of these girls were the obvious focal point of the images.

The shadows in the two lineup images depicting nine girls of various ages along a deck, from shortest to tallest, tell all. It is apparent that these images were captured at different times of the day, as the shadows are in different locations. In one image, identified as Exhibit E (lineup two), a large shadow is cast in front of the lineup and covers a greater portion of the front of the stage (located at the bottom of the image) as compared to the other lineup image, identified as Exhibit D (lineup one); as a result, in comparison to lineup one, the girls in lineup two were arranged further back on the deck so that a full view of the frontal nudity was not impacted by the shadow.

The placement of the number cards in line with the pubic area of the children, coupled with the details of the images, suggest that the full exposure of the pubic area was instrumental to the composition of the images. Thus, it is reasonable to conclude that the focal point of the images is on the children's pubic

areas. *See Wolf*, 890 F.2d at 244 (considering that, where the "pubic area [wa]s completely exposed, not obscured by any shadow or body part[,]" the focal-point factor was satisfied).

Second, in arguing that the images do not depict sexually suggestive settings,[17] defendant submits that the children in the images are part of a nudist community, partaking in "family-friendly" beauty pageants. The defendant concludes that the "outdoor, semi-public setting" consisting of "some sort of camp or resort area that caters to the nudist lifestyle," is not sexually suggestive when compared to "lounging on a bed or wrapped suggestively around a pole[.]" We deem these contentions unavailing.

While the trial justice did not use the term "setting" in his analysis, he certainly described features of Exhibits B, D, and E, akin to settings that contributed to the lascivious determination. For example, in coming to the conclusion that the girl in Exhibit B portrayed sexual coyness and an unnatural pose, the trial justice found it "important" that the background of the image depicts another nude young child and nude middle-aged women, who are gazing at the main subject of the image and clapping. In Exhibit D, the trial justice found that the presence of naked middle-aged men and women gathered around a lineup of

---

[17] The defendant's argument is in relation to the second *Dost* factor, which is "whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity[.]" *Dost I*, 636 F. Supp. at 832.

young nude children, including a man with a large smile on his face, was intended to elicit a sexual response from the viewer. With respect to Exhibit E, the trial justice determined that the image of lineup two, consisting of nine nude children in unnatural poses, with one middle-aged naked man smiling behind them, was intended to elicit a sexual response from the viewer. We do not disagree with the trial justice and, after our independent review of the images, conclude that the settings are sexually suggestive and exploitative.

We are of the opinion that the settings and the poses in the images "provide no ready explanation that makes the nudity indisputably innocent." *Frabizio*, 459 F.3d at 86. Although defendant urges this Court to consider the setting to be a beauty pageant at a nudist resort, we reiterate that defendant provided no evidence at trial that would support these purported factual connotations, and we are not inclined to jump to unsupported conclusions. What is clear, however, is that the settings do not simply portray the children engaging in ordinary activities in unremarkable locations as was found in *Rex*, such as standing in front of a body of water, playing under a garden hose, or adjusting a bicycle seat. *See Rex*, 11 N.E.3d at 1070, 1071. Rather, here, the girls are participating in an adult-organized event, where their underdeveloped breasts and genitals are center stage as exemplified by the number cards and the audience.

A person "of reasonable intelligence, guided by common understanding and practices," *Frabizio*, 459 F.3d at 85 (quoting *Freeman*, 808 F.2d at 1292), can distinguish an exposé of nude prepubescent females holding number cards—some of whom are on a deck by what appears to be a marina—from children nonchalantly standing by a body of water or children playing under a hose. *See Rex*, 11 N.E.3d at 1070, 1071. The former is a display for an audience or, at minimum, an effort to draw attention to the nude subjects therein, and the latter is not. Furthermore, the nude adults surrounding the children—all of whom are at a vulnerable age and cannot consent—contribute to the sexually exploitative nature of these images. *See Wiegand*, 812 F.2d at 1245. In totality, we are satisfied that, in relation to the second *Dost* factor, the settings of these images contribute to their lasciviousness.

Regarding the third *Dost* factor,[18] in arguing that the children are not portrayed in unnatural poses, defendant contends that, generally, young girls posing as pageant contestants is not unnatural and that, as nudists, the children posing nude in the images at issue was "perfectly appropriate." The trial justice determined that, in each of the six images, the children's fully nude poses with

---

[18] The third *Dost* factor is "whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child[.]" *Dost I*, 636 F. Supp. at 832.

number cards in hand, some with turned or tilted heads and smirks on their faces, were unnatural considering the age of each child.  We agree.

In Exhibit A, a fully nude prepubescent female is shown swinging her hair over her left shoulder, as is obvious from the movement in her hair, with her left arm out of focus; her face is turned to her left, and she is partially smiling.  In Exhibit B, the same female is depicted with the same number "6" card; except that in this image, she has stopped for a pose.  The image captures her with her right shoulder leaning backward, hips straight forward to the camera, head turned to her right, and right knee and heel raised as if she stopped to acknowledge the crowd on her right side and struck a pose while displaying her number card.  In addition, this young girl has a bathing-suit tan line, which suggests that her posing naked is not the norm, but is unnatural.

Exhibits D and E—the lineup photographs—depict nine fully nude prepubescent females, in a range of ages, all holding number cards horizontally to their pubic areas and looking at the camera.  Several of the girls are posed with one knee slightly bent or one foot slightly in front of the other, and a number of them have obvious tan lines, specifically the smallest subject holding number "1" and the girls with numbers "6," "7," and "8."  These synchronous details suggest that their poses were directed and staged by the photographer and, thus, in relation to

the third *Dost* factor, the children were depicted in unnatural poses, considering their ages. *See Dost I*, 636 F. Supp. at 832.

Exhibit N portrays a prepubescent female with tan lines, holding a number "4" card, looking at the camera and posing with her head turned slightly to her left and down, left leg slightly in front of the right, and long hair behind her shoulders exposing her fully nude front. The pose is not natural, but rather it is staged and unnatural.

Finally, Exhibit O is a depiction of a prepubescent female from the mid-thigh up, holding card number "3"—who, notably, appears to be a different person than the young girl holding the number "3" card in Exhibits D and E. This girl is posing with her head turned approximately ninety degrees to her right, hair behind her shoulders with full frontal nudity, left arm across her stomach and left hand tucked around her right side, wearing nothing but a necklace, earrings, and what appears to be lipstick. In comparison to the natural body language and demeanor in *Rex*, such as standing by a body of water or playing under a hose, the pose exhibited in Exhibit O appears uncomfortable, unnatural, and staged. *See Rex*, 11 N.E.3d at 1070, 1071; *see also Rivera*, 546 F.3d at 250 (considering that the pose in which the "subject's head is turned to an unseen observer (the photographer) suggests sexual encounter" and was staged to portray such an encounter).

Hansen argues that it is common for people in contests, such as soccer games, marathons, and beauty pageants, to carry or wear a number for identification, such that a number in hand cannot contribute to a pose being unnatural. "[G]uided by common understanding and practices," *Frabizio*, 459 F.3d at 85, were we to consider these images as beauty pageants, we note that beauty contestants generally wear sashes across their chests, from the shoulders to the waist and do not awkwardly hold number cards next to their nude pubic areas. Despite defendant's attempt to normalize the activities in these images, pageants, in and of themselves, are not ordinary, everyday activities. In the six images at issue, the prepubescent girls, "who are of an age when girls normally are clothed even when in nature or in a stream, are completely unclothed[,]" and "none of the girls' postures [are] natural or spontaneous, [such] that each girl was deliberately posed to exhibit her pubic area[.]" *Id.* at 86. Contrary to Hansen's contention that a pose must be sexually suggestive in some manner, the children need not be posed as sexually alluring for the depiction to be designed to elicit a sexual response in the viewer. *See Wolf*, 890 F.2d at 245 (concluding that "the photographer need not portray the victimized child as a temptress"). Additionally, most of the girls in these images are of an age when children are naïve to sexual suggestiveness. Based on the objective criteria in the images, we are satisfied that the poses in full

nudity look uncomfortable, unnatural, and staged, considering the age of the children.

In relation to the fifth *Dost* factor,[19] defendant argues that nothing about the expressions on the girls' faces suggests sexual coyness or a willingness to engage in sexual activity, including the smirks and smiles that the trial justice concluded satisfy this factor. Nevertheless, as Hansen points out, "[s]exual coyness is an expression outside the young child's range of experience." *Dost I*, 636 F. Supp. at 832. Rather, "[i]n the context of the statute applied to the conduct of children, lasciviousness is not a characteristic of the child photographed but of the exhibition which the photographer sets up for an audience that consists of himself or like-minded pedophiles[.]" *Knox*, 32 F.3d at 747 (quoting *Wiegand*, 812 F.2d at 1244). The composition of these images, as set by the photographer, depicts prepubescent girls who are completely exposed and identifiable by number, for whatever reason the viewer may wish to believe or fantasize.

It is noteworthy that Exhibits D and E claim an exclusive license and a website of origin—namely, "www.RussianBare.com"—not *National Geographic* or a sociology textbook. *Compare Rex*, 11 N.E.3d at 1065 n.7 (images from

---

[19] As there is no question that the fourth *Dost* factor, "whether the child is fully or partially clothed, or nude[,]" is satisfied, *see supra* footnote 13, we turn to the fifth *Dost* factor, which is "whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity[.]" *Dost I*, 636 F. Supp. at 832.

*National Geographic* magazine and sociology textbook), *with Sullivan*, 972 N.E.2d at 487 (noting that the images were found on a Russian photograph-sharing website and "not in a medical textbook, *National Geographic* pictorial, or in an art museum"). Thus, we are satisfied that the exploitative nature of these compositions, as depicting the children's vulnerability and availability, is more than capable of being translated as sexual coyness to the viewer.

Finally, in relation to the sixth *Dost* factor,[20] based on the objective criteria of the photographs' designs, we conclude that the visual depictions were designed to elicit a sexual response in the viewer. For instance, Exhibits D and E were produced for the "Russian Bare" audience. The settings of the images are neither unremarkable nor innocent. In relation to all of the six images, it is not ordinary for the fully nude bodies of young girls to be the subject of scrutiny; this factor, along with the nude adult spectators, promotes sexual exploitation and intrusion upon the privacy and dignity of the children depicted therein, at an age when they cannot "consent to its diminishment." *See Wiegand*, 812 F.2d at 1245.

Accordingly, this Court cannot "ignore the obvious exploitative nature of the depiction[s.]" *Wolf*, 890 F.2d at 246. The state's interest in protecting children from the sexual exploitation portrayed in these images "so overwhelmingly

---

[20] The sixth *Dost* factor is "whether the visual depiction is intended or designed to elicit a sexual response in the viewer." *Dost I*, 636 F. Supp. at 832.

outweighs" the defendant's so-called "expressive interests" in possessing them. *Ferber*, 458 U.S. at 763-64.

## Conclusion

The defendant's appeal is denied, and the judgment of conviction is affirmed. The papers may be remanded to the Superior Court.


**Justice Robinson, dissenting.** After careful reflection and consideration, I have come to the conclusion that I must respectfully dissent from the majority opinion in this case. While I certainly acknowledge the scholarly and well-articulated nature of the majority opinion (just as I similarly acknowledge the intelligent and meticulous nature of the trial justice's bench decision), I am ultimately unable to agree with their application of the law to the particular images at issue in this case.

I must begin by stating that in no way do I personally approve of the six images at issue, nor should anything in this dissent be understood as suggesting that I personally find any redeeming aesthetic or other value in these images. However, that is not the legal question with which it is my duty to grapple. Rather, the question is whether or not these six images can legally be classified as child pornography under the relevant statutory scheme. Based on my review of the law and the images at issue, I do not believe that these images fall within the statutory

prohibition. Nevertheless, having said that, I do acknowledge that this is a remarkably close case.

The United States Supreme Court has made it clear that, in cases such as this, where one must be ever-mindful of the rights protected by the First Amendment, "an appellate court has an obligation to 'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 499 (1984) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 285 (1964)); *see State v. Lead Industries Association, Inc.*, 951 A.2d 428, 464 (R.I. 2008) (relying on the above-quoted constitutional principle set forth in *Bose*); *Lyons v. Rhode Island Public Employees Council 94*, 559 A.2d 130, 134 (R.I. 1989); *see also United States v. Amirault*, 173 F.3d 28, 32 (1st Cir. 1999).

Accordingly, I have independently examined the record in this case to determine whether or not any of the six images at issue are graphic or lascivious (and thus considered to be child pornography under the pertinent statutory scheme),[1] rather than relying on the trial justice's interpretation and assessment of

---

[1]    Our statutory scheme criminalizes the knowing possession of child pornography and defines child pornography as "any visual depiction, including any photograph * * * or computer or computer-generated image * * * of sexually explicit conduct where * * * [s]uch visual depiction is a[n] * * * image of a minor engaging in sexually explicit conduct * * *." G.L. 1956 § 11-9-1.3(a)(4), (c)(1)(ii).

the images.  In determining that those images are lascivious, the majority relies heavily on the factors set forth in the opinion in *United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), *cert. denied*, 484 U.S. 856.  While I certainly do not fault the majority's referring to those factors for guidance,[2] I have come to a conclusion that differs from theirs when applying those factors to the images at issue.[3]

The first factor—"whether the focal point of the visual depiction is on the child's genitalia or pubic area"—in my opinion militates against these images being classified as lascivious.  *Dost*, 636 F. Supp. at 832.  While the images at issue do depict child nudity, they display virtually the entirety of the children's bodies; they do not, in my estimation, particularly draw attention to the genitalia in their design or composition.  *See Commonwealth v. Rex*, 11 N.E.3d 1060, 1070 (Mass. 2014) ("[I]t is plainly apparent that [the] only notable feature is the nudity

---

"Sexually explicit conduct" is further defined to include "[*g*]*raphic or lascivious* exhibition of the genitals or pubic area of any person * * *."  Section 11-9-1.3(c)(6)(v) (emphasis added).

[2]  I would add that the majority opinion admirably provides a thorough and accurate review of the statutory scheme and the caselaw relevant to the issues presented in this case.  I do not quibble with any of that portion of the majority opinion; rather, in applying that law, I have simply reached my own independent objective assessment of the images at issue that differs from the assessment reached by the majority.

[3]  I will not provide a detailed description of the images at issue since the majority has described at length what is portrayed in each image.

of the children[;] [i]n none of the photocopies is the focal point of the visual depiction a child's genitals * * *.");[4] *cf. United States v. Frabizio*, 459 F.3d 80, 86 (1st Cir. 2006) (stating that, in the photographs at issue in that case, the girls' legs were parted with the pubic area "plainly visible," and adding that the photographs could be seen as "drawing attention to the girls' * * * vaginas"). My opinion is not swayed by certain aspects of the images pointed out by the majority such as the presence of the numbered card at the side of the girls' hips in the images or the fact that, in some of the images, the girls' hair is placed behind their shoulders. While I have taken into account the tone of certainty in which the majority expresses its conviction that some aspects of these images make the genitalia appear to be the focal point, having viewed the images myself and having carefully considered them independently, I simply cannot agree.[5] *See Amirault*, 173 F.3d at 33 (holding that an image did not "significantly focus[] upon the genitalia" when the image

---

[4]     I disagree with the majority's determination that *Commonwealth v. Rex*, 11 N.E.3d 1060 (Mass. 2014), fails to support defendant's contentions in this case. Rather, in my opinion, the images at issue in this case are more similar to than they are different from those at issue in *Rex*, even though the images at issue in this case are not derived from *National Geographic* or a sociology textbook. *See Rex*, 11 N.E.3d at 1063. Moreover, the images with which we are confronted appear to be from a beauty pageant involving individuals who practice a nudist lifestyle, and at least one of the images at issue in *Rex* was from a naturist catalogue. *See id.*

[5]     I am in agreement with Madison Hansen's statement in his brief to this Court that "[s]imply put, there is nothing about the staging, lighting, pose, or camera angle that draws the viewer's eye to [one of the girls'] pubic area in particular * * *."

showed a "girl's pubic area * * * on clear display, [where] there is no close-up view of the groin, * * * the genitals are not featured in the center of the composition[, and] * * * the girl's legs are not widespread and the lighting of the photograph is not primarily directed at the genital region"). In my opinion, the first *Dost* factor weighs against a finding of lasciviousness.

The second *Dost* factor—"whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity"—also weighs in favor of concluding that the images at issue are not lascivious. *Dost*, 636 F. Supp. at 832. I acknowledge that the setting of these images may not be considered to be quite as benign as the images at issue in *Rex*, where the children in the images were simply engaging in ordinary activities such as playing with a hose or adjusting the seat of a bicycle. *Rex*, 11 N.E.3d at 1070, 1071. However, it appears to me, on the basis of my independent examination of the images at issue, that it can fairly be inferred that the images depict girls participating in a sort of beauty pageant in the presence of a group of individuals, including adults, who are engaging in a nudist lifestyle. Many of the children and the adults in the audience are nude. In several of the images, the girls appear to be on some sort of stage; in others one can detect an audio speaker and a bucket of flowers. I simply do not detect anything overtly sexual about the setting of the images or about the images themselves aside from the nudity; and that nudity is

not, in and of itself, enough to render them lascivious. *See Osborne v. Ohio*, 495 U.S. 103, 112 (1990) ("We have stated that depictions of nudity, without more, constitute protected expression.") (citing *New York v. Ferber*, 458 U.S. 747, 765 n.18 (1982)); *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 213 (1975) ("Clearly all nudity cannot be deemed obscene even as to minors."). While many citizens may look askance at nude beauty pageants for young girls, that does not render the images from such an event sexual in nature or, indeed, lascivious.

I concede that the third and fourth *Dost* factors may weigh in favor of these images being classified as lascivious. The third *Dost* factor relates to "whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child[.]" *Dost*, 636 F. Supp. at 832. In my estimation, the application of this factor to the case at hand is a very close call; however, I ultimately concede (albeit *dubitante*) that it likely weighs in favor of a finding of lasciviousness. It is somewhat difficult to argue that the children in the images at issue are depicted in a natural manner; the images are certainly posed and the poses are less than natural for a child to assume. Nevertheless, I do not lightly reject Mr. Hansen's argument that these poses are natural in the context of a beauty pageant and that they do not involve sexual poses or children being depicted in suggestive clothing such as lingerie. In the end, however, I am not persuaded by that argument because I am not convinced that this *Dost* factor requires that level of contextual specificity.

The fourth *Dost* factor—"whether the child is fully or partially clothed, or nude"—obviously weighs in favor of a finding of lasciviousness since the girls in the images are all nude. *Id.* (Indeed, Madison Hansen has conceded that point in his brief to this Court.)

Turning to the fifth *Dost* factor—"whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity"—I differ from the majority because I do not perceive actual sexual coyness or sexual suggestiveness in these images. *Dost*, 636 F. Supp. at 832. The majority suggests that the depiction of what it characterizes as the girls' "vulnerability and availability" somehow translates into sexual coyness to the viewer. In my opinion, that is an enormous inferential leap, and it is one that I, on the basis of my independent review, am unable to make.

Aside from the presence of nudity, I cannot perceive anything in these images which suggests sexual coyness or a willingness to engage in sexual activity. The fact that in some of the images the child is looking away from the camera with a smile or even a smirk on her face is not indicative of coyness. Indeed, the idea that the existence of a smile or smirk may be sufficient to render an image pornographic is, as Mr. Hansen argues, "downright chilling." Of all the *Dost* factors, in my judgment, this one weighs most heavily in favor of a finding that these images are not lascivious.

The sixth *Dost* factor—"whether the visual depiction is intended or designed to elicit a sexual response in the viewer"—also leads me to conclude that the images at issue are not lascivious. *Dost*, 636 F. Supp. at 832. I am unable to perceive in the images any indication that a photographer intended these images to elicit a sexual response. *Cf. United States v. Wells*, 843 F.3d 1251, 1256, 1257 (10th Cir. 2016) (holding that a defendant who secretly filmed his stepdaughter in the bathroom had "intended the videos to elicit a sexual response in himself"); *United States v. Holmes*, 814 F.3d 1246, 1252 (11th Cir. 2016) ("Each of the pictures featured the child photographed as a sexual object[.] * * * [T]hat is, so presented by the photographer as to arouse or satisfy the sexual cravings of a voyeur.") (internal quotation marks omitted); *United States v. Brown*, 579 F.3d 672, 681 (6th Cir. 2009) (holding that an image was "clearly lascivious" and intended to elicit a sexual response in the viewer when "[t]he image depicts one of the toddlers [at issue] lying nude on a bed touching her genitalia while her legs are spread[;] [t]he toddler is fully nude, the photograph is focused on the girl's genitalia, and the positioning of the girl's hand appears intended to be sexually suggestive").

With respect to the sixth *Dost* factor, the majority contends that "it is not ordinary for the fully nude bodies of young girls to be the subject of scrutiny; this factor, along with the nude adult spectators, promotes sexual exploitation and

- 44 -

intrusion upon the privacy and dignity of the children depicted therein, at an age when they cannot consent to its diminishment." (Internal quotation marks omitted.) I am in essential agreement with that statement as being congruent with my personal reaction to these images. However, the fact that the majority and I consider these images to be inappropriate does not make these images *sexual*; it does not mean that the images were designed to elicit a *sexual* response in the viewer. It is a reasonable interpretation that these images are of a beauty pageant involving individuals who engage in a nudist lifestyle. While I (and undoubtedly many other citizens) would not choose such a lifestyle and would prefer not to see children participating in same, that does not render images (even those of children) from a group engaging in nudism inherently sexual based on the nudity alone. *See Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."). There is nothing in these images to suggest that they were *intended* to elicit a sexual response and were anything other than images capturing a nudist beauty pageant. *See Amirault*, 173 F.3d at 34 ("We believe * * * that it is a mistake to look at the *actual* effect of the photograph on the viewer, rather than upon the *intended* effect.") (emphasis added); *see also United States v. Villard*, 885 F.2d 117, 125 (3d Cir. 1989) ("Although it is tempting to judge the *actual* effect of

the photographs on the viewer, we must focus instead on the *intended* effect on the viewer.") (emphasis in original).

After careful reflection, an examination of the *Dost* factors leads me to the conclusion that the images at issue in this case are not lascivious and, therefore, do not constitute child pornography as it is defined in the statutory scheme at issue.[6] In my judgment, the only factor in these images which could clearly be considered graphic or lascivious is the fact that the children are nude. However, the United States Supreme Court has been absolutely clear in stating that nudity, without more, constitutes protected speech. *Osborne*, 495 U.S. at 112.

Due to my conviction that these images do not constitute child pornography and are protected by the First Amendment, I respectfully dissent from the majority opinion in this case.

---

[6]     With respect to whether or not the images are "[g]raphic," as defined by § 11-9-1.3(c)(8), I am of the opinion that the statutory definition provided is circular. "Sexually explicit conduct" is defined in part as "[g]raphic or lascivious exhibition of the genitals or pubic area," and "[g]raphic" is defined as when a "viewer can observe any part of the genitals or pubic area * * * during any part of the time that the sexually explicit conduct is being depicted." Section 11-9-1.3(c)(6)(v), (c)(8). However, in my judgment, despite the unclear statutory definition, these images are not graphic for many of the same reasons as they are not lascivious.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | State of Rhode Island v. Madison Hansen. |
| **Case Number** | No. 2019-22-C.A. (P2/16-470A) |
| **Date Opinion Filed** | April 27, 2020 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Brian P. Stern |
| **Attorney(s) on Appeal** | For State: <br><br> Owen Murphy <br> Department of Attorney General <br><br> For Defendant: <br><br> Angela M. Yingling <br> Office of the Public Defender |